THE STATE ex rel. MINNESOTA MUTUAL LIFE INSURANCE COMPANY v. CHARLES A. DENTON, Judge, and HERMAN P. FARIS.

In Banc, June 21, 1910.

1. **JURISDICTION: Accounting: Prohibition.** It is within the scope of equity jurisdiction to cause an accounting to be made, under some circumstances, and to render judgment for the balance ascertained to be due. But the money judgment is to follow the accounting, and if the conditions are such as to put the accounting beyond the reach of the court, it has no jurisdiction to render a money judgment. If the accounting that must be had before the balance can be ascertained is of a character which the court had no power to make, and would involve destruction of rights which could not be restored, an appeal would be of little, if any, avail.

2. ———: ———: ———: **Visitation: Foreign Insurance Company.** If before it can be determined what balance, if any, is due plaintiff from a foreign insurance company, to which he paid premiums while it did business on the assessment plan and also since it became an old-line company, and which premiums he claims the company has applied to the payment of its old-line level premium policies and therefore misappropriated, there must be a complete visitation of the corporation, a thorough inquiry into all its affairs, and an ascertainment not only of the condition of the account with plaintiff, but of the account of all its members, who have or have ever had policies on the assessment plan, no matter how numerous they may be or through how many States they may be scattered, a court of equity in this State has no jurisdiction, at the suit of a policy-holder, to take the account. A court of equity having full jurisdiction of the corporation might take the account, but the jurisdiction of a court of equity of this State over a foreign corporation licensed to do business here is limited and qualified.

3. ———: ———: ———: ———: **Fraud.** A demurrer does not admit an act characterized as fraudulent to be fraudulent. It simply admits the act. But aside from that, even though the act constitute fraud, it does not confer on a court of this State jurisdiction, in the exercise of its visitorial powers, authority to make a full examination into all the affairs of a foreign insurance company in order that it may enforce an accounting between it and individual policyholders.

4. ———: ———: **Bill of Discovery.** A bill of discovery cannot confer jurisdiction on a court, where the discovery asked is only in aid of an accounting, and the court has no jurisdiction either to take or compel an accounting.

5. ———: ———: **Receiver: Foreign Insurance Company: Misappropriation.** A request by a policy-holder who holds three assessment policies of $2000 each in a foreign insurance company, none of which has matured and on which nothing is now due, for the appointment of a receiver to go to the foreign State and take possession of a guarantee fund of $600,000 which he claims is being misappropriated to the payment of old-line policies which the company is now issuing, and to preserve it for the claims of himself and of all others who will join him in the suit, cannot be entertained or granted by a court of equity of this State, because the court cannot confer on a receiver visitorial powers to be exercised outside of this State, and no such receiver would or ought to be recognized at the home of the corporation.

## Prohibition.

WRIT AWARDED.

*How, Butler & Mitchell* and *Rosenberger, Taylor & Reed* for relator.

The courts of one State will not exercise visitorial power over the internal management and control of a foreign corporation in a suit by a member thereof who bases his rights upon his membership. 19 Cyc. 1236; Sidway v. Missouri Co., 101 Fed. 481; 13 Am. and Eng. Ency. Law, 849; Clark v. Association, 43 L. R. A. (Colo.) 390; Condon v. Association, 44 L. R. A. (Md.) 149; Taylor v. Association, 45 L. R. A. (Va.) 621; Howard v. Association, 45 L. R. A. (N. C.) 853; 14 Cyc. 308. Prohibition is the proper remedy under the circumstances disclosed by the record. State ex rel. v. Reynolds, 209 Mo. 177; Appo v. People, 20 N. Y. 531; State ex rel. v. Williams, 221 Mo. 227; State ex rel. v. Elkins, 130 Mo. 105; State ex rel. v. Fort, 210 Mo. 525; State ex rel. v. Sale, 188 Mo. 497; State ex rel. v. Slover, 126 Mo. 655; State ex rel. v. Wood,

155 Mo. 425; Arnold v. Henley, 155 Mo. 49; State ex
rel. v. Withrow, 154 Mo. 397; State ex rel. v. Aloe, 152
Mo. 466; State ex rel. v. Denton, 128 Mo. App. 314;
State ex rel. v. Spencer, 166 Mo. 271; Carter v. Bolster,
122 Mo. App. 144; State ex rel. v. Dillon, 96 Mo. 56;
State ex rel. v. Dearing, 180 Mo. 69; State ex rel. v.
Barnett, 111 Mo. App. 558; Teasdale v. Jones, 40 Mo.
App. 250; 1 L. R. A. (n. s.) 554, and note.

*J. H. Lucas* and *Fyke & Snider* for respondents.

(1) This court will issue its writ of prohibition
only in case the court below has no jurisdiction at all
of the subject-matter of the litigation, or, having juris-
diction, has exceeded, or is threatening or about to
exceed its jurisdiction. It is not a writ of right. State
ex rel. v. Sale, 188 Mo. 496; State ex rel. v. Gates,
190 Mo. 540. It must clearly appear that the inferior
tribunal is actually proceeding, or is about to proceed,
in some matter over which it possesses no jurisdiction,
and when such intention is not clearly shown the writ
will be refused. 23 Am. and Eng. Ency. Law (2 Ed.),
206. It is fundamental that the writ of prohibition
must not be permitted to assume the functions of ap-
peal, writ of error, or *certiorari.* Wand v. Ryan, 166
Mo. 646. (2) The circuit court is a court of general
original jurisdiction, and as such has jurisdiction of all
claims at law or in equity, except such as have been
taken out of that jurisdiction by positive law. Strode
v. Gilpin, 187 Mo. 391. If the complaint states a case
belonging to a general class over which the authority
of the court extends, there is jurisdiction, and the
court has power to decide whether the pleading is good
or bad. Winningham v. Trueblood, 149 Mo. 580; Rail-
road v. Lowder, 138 Mo. 536. In chancery it has been
universally held that when the court obtained jurisdic-
tion of a controversy, it would proceed to do complete
justice therein though part of the remedy afforded

might be of such a nature (for example the adjustment of damages) as ordinarily would require a hearing in a court of law. State ex rel. v. Rombauer, 105 Mo. 108. By jurisdiction is meant, that the court has jurisdiction of causes of the general class to which the action belongs. Posthlewaite v. Ghiselin, 97 Mo. 424; Hagerman v. Sutton, 91 Mo. 531; Gates v. Lustin, 89 Mo. 13. The action is one of purely equitable cognizance; such actions are transitory in nature, and the process of the courts of equity therein operates *in personam*, and when such courts acquire jurisdiction of the person, they have jurisdiction of the subject-matter and may render a personal judgment. State ex rel. v. Zachritz, 166 Mo. 313; Olney v. Eaton, 66 Mo. 563; McNichol v. Mercantile Agency, 74 Mo. 475. The acts complained of affect plaintiff's individual rights. He is not asking the court to exercise visitorial power over the corporation. He asks that his rights be protected. He does not ask for a receiver for defendant's entire business. He asks that the particular fund which admittedly is being misappropriated be placed in the hands of a custodian to be disposed of according to his contract. He does not ask that defendant be enjoined from doing business at all. He asks that it be restrained from making excessive assessments and from declaring his policies forfeited for his failure to pay such excessive demands. He asks that defendant be required to disclose to him the amounts wrongfully extorted from him, knowledge of which is exclusively with defendant, and he asks that defendant be required to refund to him money which it has collected from him wrongfully and to which he is entitled. "Where the action proceeds in right of the individual shareholder who brings it, the relief will often take the form of restoring to them what they have lost." 10 Cyc. 992. The distinction between the right of a shareholder to sue or defend for the corporation, and his right to sue for the redress of injuries which are per-

sonal to himself, whether committed by the corporation or through the malfeasance of its agents, is total and clear. 10 Cyc. 965-981. In granting injunctions the court operates *in personam*, and may exercise its jurisdiction quite independently of the locality of the act to be done. State ex rel. v. Dearing, 180 Mo. 63. Injunction will lie to prevent books of foreign corporations being removed. State ex rel. v. Dearing, 184 Mo. 647. Receiver appointed in foreign State recognized here. Neil v. Bank, 76 Mo. App. 34; Seymour v. Newman, 77 Mo. App. 578. If the circuit court should appoint a receiver for the fund referred to in the petition, and if such action should be erroneous, it could be corrected by appeal, or if the circumstances indicated that delay would be highly injurious, this court could then award its writ prohibiting the judge from enforcing the order appointing a receiver. State ex rel. v. Dearing, 184 Mo. 647. If the plaintiff knew the correct amount for which he should be assessed and which he should pay, knowledge of which is solely in the insurance company, he could tender to it that amount, and if it refused to receive it plaintiff could maintain an action as for breach of contract, to recover all moneys paid and such other damages as he might be entitled to recover. McKee v. Insurance Co., 28 Mo. 383; Smith v. Insurance Co., 64 Mo. 330; Suess v. Ins. Co., 64 Mo. App. 1; Slater v. Supreme Lodge, 76 Mo. App. 390; Dickey v. Insurance Co., 82 Mo. App. 376; Bestop v. Insurance Co., 85 Mo. App. 307.

VALLIANT, J.—Relator seeks a writ of prohibition to go against the judge of the circuit court of Henry county to prohibit him entertaining jurisdiction of a suit pending in that court wherein Herman P. Faris is plaintiff and this relator is defendant. The suit was begun by the filing of a petition in the name of the plaintiff for himself and all others similarly situated who might see fit to come in and share in the

suit. The petition is in the nature of a bill in equity complaining of relator's alleged mismanagement of its business as a life insurance company, seeking judicial investigation of its affairs and the appointment of a receiver to conduct its business. On return of the summons the insurance company filed a demurrer to the petition, assigning as one of the grounds therefor that the court had no jurisdiction of the cause stated in the petition, which demurrer was considered by the court and overruled, whereupon the insurance company as relator filed this suit in this court. The question of the jurisdiction of the circuit court arises out of the statements in the petition which are substantially as follows:

The Minnesota Mutual Life Insurance Company is a corporation organized under the laws of Minnesota and domiciled at St. Paul in that State, engaged in the business of life insurance, extending into other states, Missouri among the others. The company was originally chartered to do the business of life insurance on the assessment plan, that is to say, on the death of one of its members an assessment was made on the surviving members and out of the proceeds of such assessment the insurance on the life of the deceased member was paid. On becoming a member every one paid into the treasury a sum equal in dollars to the number of years of his age, which went into what was called the guarantee fund to secure the payment of the assessments and to be used in case of necessity in payment of death benefits. While the company was doing business on that plan the plaintiff became a member and took out three policies on his life for $2000 each, paid the fees and amount therefor at the time, and has ever since paid in due course all the assessments levied by the company. And so the company went on in its business for several years and accumulated in the guarantee fund $600,000. But afterwards in 1901 the company, whose original name was The

Bankers Life Association of Minnesota, changed its name to the Minnesota Mutual Life Insurance Company of St. Paul, Minnesota, and changed its plan of doing business, ceased to issue policies on the assessment plan and conducted its business thereafter as an old-line life insurance company and issued policies only on a level premium plan. After such change the company endeavored to induce all its old members to surrender their policies and to take policies on the level premium plan, and did succeed in inducing many, how many plaintiff does not know but seeks a discovery thereof, to make such change. Still a considerable number of the assessment policy-holders, among them the plaintiff, have refused to go into the new scheme and have held on to their original policies and have continued to pay their assessments. But the ceasing to issue policies on the assessment plan and the inducing of a large number of holders of such policies to surrender theirs, has thrown a greater burden on those who have held their originals, in the way of increased assessments, that is to say, not only has the number of members under the assessment plan not increased, but it has diminished, yet the company still levies assessments on the remaining original members not only to pay death benefits occurring in their number, but to pay death benefits on the lives of those who surrendered their assessment policies and took out policies on the level premium plan, although holders of the latter kind were not assessed to pay the death benefits, when holders of assessment policies died. It is charged in the petition that this action on the part of the insurance company was done for the fraudulent purpose of forcing the assessment policy-holders to lapse in their membership whereby the defendant would claim and keep the guarantee fund, whereas that fund could lawfully be used for no other purpose than paying or securing assessment plan policies, and in the orig-

229 Sup—13

inal articles of association in force when plaintiff became a member it was expressly so stated and also that that provision should never be altered or amended without the written consent of every member of the association, which consent has not been given by a large number of members.

It is also charged that the company has failed to apply the guarantee fund to the payment of assessments occurring on the death of members holding assessment policies, and has fraudulently misappropriated and is continuing to misappropriate a large part of it and unless restrained will dissipate the whole fund. That by this unlawful conduct plaintiff has been compelled to pay increased and burdensome assessments. The prayer of the petition is that the defendant company be required to disclose the amount of the guarantee fund at the date it ceased to do business on the assessment plan; the amount on hand now; the disposition it has made of that fund; how it is invested; how many members now living hold policies on the assessment plan; their postoffice addresses; the aggregate of the outstanding assessment plan policies; what amount of money has been received upon assessments collected from members since the change of name; what part of such money has been paid on policies on the old-line plan; to state an account with plaintiff since he has been a member, showing how much money collected from plaintiff has been appropriated to payment of death losses on old-line policies; that defendant be enjoined from appropriating any of the guarantee fund to payment of policies on the old-line plan, and from making assessments to pay claims other than death losses on the assessment-plan policies; that a receiver be appointed to take charge of the guarantee fund and collect and receive all assessments hereafter made against assessment-plan members and see that they are applied only to the payment of death losses on assessment policies; that defendants be adjudged

to pay plaintiff and all other persons similarly situated who see fit to come in and participate in this litigation all sums collected heretofore and applied to the pay-, ment of death losses under policies on the level-premium plan, and for general relief.

The respondent's return to the rule to show cause why a writ of prohibition should not issue admits the allegations of the petition of relator, but avers that the sole object of the petition in the case of Faris against the insurance company, as respondent construes it, is not to have the circuit court exercise a complete visitorial power over the business and affairs of the relator but on the contrary one of the purposes of the petition is to obtain a money judgment against relator on account of moneys received by it which it ought not to have received and ought not to retain, and that if respondent erred in overruling the demurrer or should hereafter err in any respect in the progress of that cause the relator has a complete remedy by appeal.

From this return it may be inferred that the learned judge in overruling the demurrer did not construe the petition as one aimed to bring about a visitation of the affairs of the relator, but only to obtain a money judgment for a balance found to be due plaintiff after such an accounting as a court of equity could cause to be made.

It is within the scope of equity jurisdiction to cause an accounting to be made under some circumstances and to render judgment for the balance ascertained. But the money judgment is to follow the accounting, and if the conditions surrounding the case are such as to put the accounting beyond the reach of the court it has no jurisdiction to render a money judgment. Ordinarily an error committed in the rendering of a money judgment may be corrected on appeal, but if the accounting that must be had before the balance can be ascertained is of a character which the court has no power to make, and would involve destruction of

rights which could not be restored, an appeal would be of little if any avail. In this case before the balance, if any, that is due the plaintiff could be ascertained, there must be a complete visitation of the corporation, a thorough inquiring into all of its affairs and an ascertainment not only of the condition of the account of the corporation with this plaintiff, but of the accounts of all its members who now have, or have ever had, policies on the assessment plan, no matter how numerous they may be, or through how many States they may be scattered, because this is a mutual concern and the accounts of all are involved in the account of one. Such an accounting is not beyond the jurisdiction of a court of equity that may have full jurisdiction of the corporation, but is beyond the jurisdiction of a court of equity that has only the limited or qualified jurisdiction over a foreign insurance corporation that is given by our laws to our courts. When license is granted a foreign insurance company to do business in this State one of the conditions on which the license is granted is that it name an agent on whom service of process may be made, so that it may be, called into court to answer a suit on a contract, and our courts have ample jurisdiction to compel performance of obligations by such companies. Nor are our citizens wholly without the right to have the internal affairs of such corporations examined and their methods of business and their ability to perform their obligations ascertained, and their abuses if any corrected, without going to another State for that purpose; but that power is lodged in the Superintendent of Insurance, who may, until he has been allowed to make the examination and is satisfied, refuse to grant a license, or, having granted, may for good cause revoke it. But beyond the power of the court to enforce the performance of a contract and beyond the power of the Superintendent of Insurance to correct the evil, if a citizen of this State wants further redress in-

volving a judicial investigation into the affairs of the foreign corporation of which he is a member, he must go to a court in the state where the corporation is at home.

In the brief for relator we are referred to a decision of the Supreme Court of the United States holding that the transaction whereby this insurance company changed the character of its business from the assessment to the old-line plan was in conformity to a statute of Minnesota and was valid. [Wright v. Insurance Co., 193 U. S. 657.] But that question, if there is such a question, is not in this case; we are now concerned only with the question of jurisdiction of our circuit courts over a cause like this.

In Condon v. Mutual Reserve Association, 89 Md. 99, the Supreme Court of Maryland considered a case very like this and held that the trial court had no jurisdiction. The Maryland court pointed out the dual capacity of a policy-holder in such a mutual company; he was an insured and, to a certain extent, an insurer, a creditor and a member. The court said: "The mere fact that he is a member of the corporation does not preclude him from asserting against the corporation any right arising out of his contract; but the character of the remedy invoked may measure the limits of the jurisdiction of the tribunal appealed to, when the domicile of the corporation is considered. It is therefore entirely possible that a state of facts which would authorize a court, in the exercise of its visitorial power, to inquire into the validity of acts affecting the rights of a policy-holder, when done by a corporation located within the jurisdiction of the court, would, as respects a foreign corporation, be wholly insufficient to confer upon the same court jurisdiction to act at all." The complaint of the policy-holder in that case was very much like the complaint in the case at bar: it was charged that the assessments were illegal, excessive and fraudulent, and the prayer was for an

accounting, involving the same scope of inquiry as in this case and the appointment of a receiver, but the court said that because it was a New York corporation the complainant would have to take his complaint to a New York court. Respondent in his brief says that the petition charges fraud and that the demurrer admits it, but that is hardly so; the demurrer admits the fact pleaded, but not the characterization which is only a conclusion. But even if the acts complained of were fraudulent they do not, in such case, affect the question of jurisdiction. We quote again from the Maryland court: "An act done with a fraudulent motive is, as an act, precisely identical with the same act done without such a motive, in so far as it relates to this jurisdictional question; because it is the quality or nature of the act, not the incentive that promoted it, or the effect that it produces, which determines whether it does pertain to the internal management of the corporation or not."

That insurance company was assailed with a like suit in Virginia and also in North Carolina, and in both of those States it was held that the court had not jurisdiction. [Taylor v. Mutual Association, 97 Va. 60; Howard v. Mutual Association, 125 N. C. 49.]

A court of equity never does a vain act, it never decrees what it cannot compel to be performed. If this were a domestic corporation the court could decree such an accounting as prayed, appoint its commissioner to go to the office of the corporation and overlook and examine all its books, appoint a receiver, if it deemed proper, to take possession of all its assets and administer the same under the direction of the court *pendente lite*, and if the corporation or its officers should refuse to surrender its books or assets, there would be sufficient executive power forthcoming at the call of the court to enforce its decrees. But the commissioner or the receiver in such case is but the representative of the court; he is, while he keeps within

his decree, *pro hac vice* the court; where he goes the court goes and what he does the court does. Can the circuit court in this case, in the person of its representative, go to Minnesota and take charge of the affairs of this corporation there? If the corporation should refuse to turn over its books to the commissioner or its money to the receiver what could the court do? A court has no right to put itself in a position where its orders may be treated with contempt; the very fact that it could not force obedience shows its lack of authority to render the judgment.

There are, according to the petition, a large number of holders of policies like those held by plaintiff, scattered perhaps over many States, each of whom has as much right to bring a like suit in his State as the plaintiff has to bring this suit. Each of those many policy-holders would have an interest in each of the many suits, because in a mutual concern the interest of one cannot be determined without determining the interest of all, or at least the basis on which the interest of all must be calculated. It would be a strange system of law that would involve a concern in such confusion. If such were the law no insurance company would venture to do business outside its own State.

It would be impossible for the circuit court to render an intelligent judgment for the money which the plaintiff says he has been unlawfully compelled to pay in excess of legitimate assessments, without entering into the elaborate accounting above indicated, and since the court has no jurisdiction to make such an accounting it has no jurisdiction to render such a money judgment. Nor can the jurisdiction be sustained on the ground that the petition is in the nature of a bill for discovery, because the discovery asked is only in aid of the accounting; is in fact but a part of the accounting. "A bill for relief and discovery cannot be sustained solely for the

sake of discovery; therefore where, in a bill for discovery and relief, the discovery sought is incidental to the relief sought, a demurrer well taken to the relief holds good as to the discovery also.'' [14 Cyc. 308.]

A receiver appointed by a court of competent jurisdiction in another State is recognized under certain conditions in this State. The law on this point is well stated in two cases cited in respondent's brief, Weil v. Bank, 76 Mo. App. 34, opinion by Judge ELLISON, and Seymour v. Newman, 77 Mo. App. 578, opinion by Judge BOND. In each of those cases the corporation for which the receiver was appointed was domiciled in the jurisdiction of the court which made the appointment, presumably the bulk of the assets of the bank was in each case within that jurisdiction and a small asset was found here. A reading of those cases shows that the recognition of the foreign receiver is only a matter of comity and is not extended when the rights of a citizen would be injuriously affected. If a court in a foreign State should undertake to appoint a receiver for a Missouri corporation the bulk of whose assets were in this State, his authority would not be recognized here. In this case the plaintiff claims to hold three policies of $2000 each, not mature, nothing now due on them, yet he asks that to protect his interests a receiver be appointed to go to Minnesota and take possession of the $600,000 guarantee fund, to preserve it for the security of his claims and the like claims of all others who will join him in this suit. No such receiver would be or ought to be recognized at the home of the corporation.

The circuit court has no jurisdiction of the cause of action stated in the petition of Herman P. Faris v. The Minnesota Mutual Life Insurance Company, and no amendment of the petition could give the court jurisdiction of that cause; an amendment stating a cause of action within such jurisdiction would be an amend-

ment stating a new or different cause of action; the demurrer should therefore have been sustained and the cause dismissed.

The writ of prohibition is awarded as prayed. All concur, except *Burgess, J.,* not sitting.