STATE EX REL. BANKERS' LIFE COMPANY, RELATOR, v. CHARLES A. HENDRICKS AND THEODORE G. RECHOW, RESPONDENTS.—36 S. W. (2d) 409.

In the Springfield Court of Appeals. Opinion filed February 23, 1931.

*R. B. Alberson, E. M. Nourse, O. O. Brown* and *F. M. McDavid,* for appellant.

*T. G. Rechow* and *Herman Pufahl,* for respondents.

SMITH, J.—Relator, a corporation, domiciled at Des Moines, Iowa, seeks a writ of prohibition against the judge of the circuit court of Cedar county to prohibit him entertaining jurisdiction of a suit pending in that court wherein Theodore G. Rechow is plaintiff and this relator is defendant.

The action above described was instituted by the filing of a petition in April, 1930, in the circuit court of Polk county, by the said Theodore G. Rechow, wherein he seeks the recovery of $1500 as damages for breach of an alleged contract. A change of venue was applied for, and the case was sent to and is now pending in the circuit court of Cedar county, Missouri, over which court respondent, Charles A. Hendricks, presides as judge.

Thereafter, a demurrer was filed by this relator on the sole ground that respondent, Charles A. Hendricks, judge of the circuit court aforesaid, was without jurisdiction to try the case. This demurrer was by Judge Hendricks overruled, and this relator, now seeks at the hands of this court a writ of prohibition and in its petition sets up the various grounds upon which it depends and relies as a basis and reason for the issuance of such writ.

The question is one of jurisdiction. It is averred on the one hand, and denied upon the other, that the circuit court of Cedar county and Charles A. Hendricks, as judge thereof, has no jurisdiction to try the cause put in issue under the facts stated in the petition and filed by the said Rechow in the original case.

Briefly stated, the relator contends that this court should issue its permanent writ of prohibition directed to Charles A. Hendricks, judge of the circuit court of Cedar county commanding him to proceed no further with the consideration of the case of Rechow against the relator, because a determination of the case in that court will of necessity require an accounting of the business and affairs of the relator, who is domiciled in another state, and because it is a foreign corporation the circuit court of Cedar county is without jurisdiction to go into that foreign state for such an accounting.

The respondents practically concede that if under the petition filed in the circuit court an accounting is necessary, then the circuit court is without jurisdiction, but they stoutly insist that Rechow's petition in circuit court asks for a money judgment only and that the amount of that money judgment can be ascertained without any accounting or without any visitorial powers whatever and that if this matter of prohibition was out of the way all that Rechow would be required to prove in order to sustain his case would be, first, that there was a contract as alleged; second, that it was breached; and third, that he made the payments as alleged.

We think, then, the only question left, is for us to determine from the pleadings whether or not an accounting will be necessary for a proper and complete determination of Rechow's case. If an accounting is necessary and the court would have to go to the domicile of the relator for this accounting, then the writ of prohibition should go, but if such is not necessary then the writ should be denied. This question has been passed on many times by our courts. Two of the leading, determinative cases by the Supreme Court being, State ex rel. v. Denton, 229 Mo. 187, 129 S. W. 709; State ex rel. v. Shain, 245 Mo. 78, 149 S. W. 497.

The petition filed by Rechow in the circuit court alleged that the defendant is and was at all the times mentioned in the petition a corporation organized under the laws of the State of Iowa, and licensed to do business in the State of Missouri as a life insurance company on the assessment plan. That the defendant's name was "The Bankers Life Association," and was operating under that name at the time his certificate of insurance was issued. In October, 1911, the defendant changed its name to that of "The Bankers Life Company."

The petition alleges that on the 8th day of May, 1896, the defendant, in consideration of the payment of $73.50 in cash and the execution of four notes aggregating $49 which notes and all interest thereon were afterwards paid by the plaintiff, issued and delivered its certificate of membership No. 52738 in the sum of $2,-000 payable in case of death to the children of the plaintiff; that said contract was made and entered into in Polk county, Missouri, of which county the plaintiff was then and has ever since been a resident. A sworn copy of said contract of insurance was attached to said petition, dated April 22, 1896, and showing delivery May 8, 1896. The remaining part of said petition is as follows:

"The plaintiff states that section 2 of article X of the Articles of Incorportion of the defendant provides that:

"The guarantee funds shall consist of the deposits pledged by each member of the association for the payment of assessments, and that the said deposit required of each member shall consist of the

sum of $1 for each year of the age of the member at date of application counted at nearest birthday and may consist of cash or of note at four per cent interest, payable on such terms as the board of directors may prescribe and the board shall have power to declare a certificate of membership void and of no effect upon defalcation of payment of any note executed for said deposit.

"The plaintiff states that section 3 of article X of the Articles of Incorporation of the defendant company provides that:

"The reserve fund shall consist of all guarantee deposits forfeited to the association by lapsed members, and the interest accruing from all funds of the association of whatever nature; all gains, discounts and margins realized on sale of bonds and mortgages and on real estate, taken under foreclosure or otherwise, and all unused surplus arising from the contingent fund and all other sources. This reserve shall be set apart as an emergency fund for the purpose of providing for death losses in excess of one per cent per annum of the membership of the association, and for the further purpose of advances for the payment of death losses when the benefit fund is exhausted.

"The plaintiff states that the articles of incorporation and by-laws are printed on said contract or certificate and are made a part of the said contract or certificate and are the only sections that have any bearing on said contract or certificate so far as this plaintiff is concerned.

"The plaintiff states that it is provided in said certificate that until the death rate exceeds one per cent of the entire membership of the company, none of the funds of the company applicable to and available for the payment of excess assessments could be drawn upon.

"The plaintiff states that he paid the notes hereinbefore mentioned in the sum of $49 and all the interest thereon, up to the time of their payment and that he also paidi all the calls or assessments payable on or before the first day of February, 1927.

"The plaintiff states that from the time of his first assessment on the foregoing certificate in June 1896, and until up to the first day of January, 1912, his assessments on said certificate made in the months of March and September of each year, and which were payable in April and October of such year, were $4.90 each and that his assessments made in December and June of such year and which were payable in January and July of each year were $6.37 and that beginning with January 1, 1912, his assessments made in March and September of each year and which were payable in April and October and such year, were $6.82 and that said assessments remained at such amounts and such sums until the March assessment which was payable in April, 1927.

"The plaintiff states that in October, 1911, the defendant changed its name to the Bankers Life Company and ceased to write insurance on the assessment plan and that thereafter the defendant company has written insurance on the level rate plan only.

"Plaintiff states that as soon as he ascertained that the defendant had ceased to write insurance on the assessment plan, and that it would write insurance only on the level rate plan, he realized that if those persons who were then members of the association and whose certificates had been written on the assessment plan would be placed in a class by themselves or in a separate class for assessment purposes that it would destroy the value of his insurance because if no new members were taken in to be considered for assessment purposes, the rates and assessments would necessarily be increased in order to meet the death losses and that realizing such fact, plaintiff desired to know whether or not members who thereafter joined the defendant company or association would be the assessed or that the premiums would be used in order to pay the death losses of persons who were already members of the company and that the plaintiff, in order to assure himself of his status in said company inquired of the defendant company to know his status and to learn whether the assessment members were to be put into a class by themselves for assessment purposes and that in answer to his said inquiry the defendant company on December 8, 1911, informed plaintiff by letter that all contracts which had been issued by the company would be carried out to maturity in accordance with the terms thereof, and that the then present members would not be put in a class by themselves for assessment purposes, but would remain a part of a large and growing company and would share in the benefits derived from the admission of new members and new business and that the death losses occurring throughout the entire body of the lives insured would be equitably apportioned, so that each person whether insured on the assessment plan or legal reserve basis would bear his just share of the total death losses of the company and that the death losses would be equitably apportioned throughout the entire membership of the two classes combined and that the funds thereto then created would be only used for the purpose of which such moneys were set aside and that the reserve fund at that time amounted to eight million dollars and was rapidly increasing and would be used in the payment of death losses in excess of one per cent of the membership yearly if such loss ever exceeded one per cent and that it further represented and stated to this plaintiff that the death losses had never attained an excess of one per cent of the membership yearly during the entire history of the company. The plaintiff alleges that the emergency fund was more than $8,000,000, and was in fact rapidly increasing.

"The plaintiff states that said letter construed said certificate and said contract of insurance to mean and did mean that the death losses would be apportioned throughout the entire membership of those who held certificates on the assessment plan and those who became members and who would hold certificates under the level rate plan, and also construed said certificate in accordance with the provisions of said certificate and which certificate provides that the emergency fund could not and would not be drawn upon until the death rate of the entire membership and said fund was applicable and available for the payment of assessment members 176, 177, 178, 179, 180, 181, 182, and 183. Plaintiff alleges that none of said assessments were based upon the death rate of the assessment members alone.

"The plaintiff states that relying upon the representations and assurances so made to him by the defendant, and relying upon the same and believing that the assessments members would obtain and derive the benefit of the admission of new members and new business and that the assessment members could not be put in a class by themselves for assessment purposes and relying upon all of the statements heretofore set forth and made by the defendant, he continued to pay all assessments thereafter made by the defendant company and paid to the defendant from said date a sum amounting in the aggregate to one thousand dollars.

"Plaintiff states that but for the statements and representations so made by the defendant, he would not have paid any of the said assessments after the year 1911, but that relying upon such statements and representations he continued as hereinbefore stated to pay all of the assessments levied by defendant company.

"That defendant company is now estopped as to this plaintiff from denying that the contract of insurance was and is as interpreted by it, and this action is based on a breach of the contract as contained in said certificate and contract of insurance.

"The plaintiff states that until Assessment No. 176 which was levied in March, 1927, he had never been advised or informed and had no knowledge that any prior assessment had been based upon any other basis than upon the entire membership of the company including assessment members as well as members holding certificate under the level rate plan.

"The plaintiff states that the death rate in the defendant company has never been one per cent of the total membership of said company in any one year and that therefore no part of the surplus or emergency fund could have been used to pay any death losses.

"The plaintiff further states that he paid assessment No. 176 and all subsequent assessments up to No. 183 as follows: No. 176

paid April 27, 1927, $22.50; No. 177 July 31, 1927, $26.95; No. 178, October 31, 1927, $22.05; No. 179, January 31, 1928, $19.60; No. 180 May 1, 1928, $24.50; No. 181, August 1, 1928, $26.95; No. 182, October 29, 1928, $26.95; amounting in all to $169.05, under protest, and that he refused to pay the assessment No. 183, which defendant claimed was due and payable on or before February 1, 1929, and that on account of such refusal to pay said assessment No. 183, plaintiff is informed and alleges the fact to be that the defendant declared his membership and certificate in said company forfeited and also declared that plaintiff had forfeited all his interest in the company and all his right, title and claim to any of the moneys being in any of the various funds of the company.

"The plaintiff states that all of the assessments from 176 to 183 were grossly excessive and void because they were based on the death rate of the assessment and were made in violation of the contractual rights between the plaintiff and defendant under the certificate of insurance.

"That it placed all of the assessment members and persons who held certificates or contracts under the assessment plan in a class by themselves for assessment purposes and did not apportion the death losses throughout the entire body of the persons insured in the defendant company whether they were insured on the assessment plan or basis or legal reserve plan or basis, but levied the assessments only on those members of the company carrying insurance of the assessment plan in violation of its contract insurance and said certificate and agreement with plaintiff.

"That defendant did not proportion the total death losses throughout the entire membership of the members holding certificates on the assessment plan and members holding certificates under the level rate plan.

"The plaintiff states that on account of the breaches of said contract of insurance as contained in said certificate as hereinbefore alleged and on account of misrepresentations in inducing the plaintiff to pay the assessments since 1911 and in placing the assessment members of the company in a class to themselves for assessment purposes the defendant company is indebted to plaintiff for all sums of money that he has paid to the defendant since the issuance of his certificate which in the aggregate amounts to fifteen hundred dollars and for which said sum together with the interest on the several payments from the time each payment was made, and for the costs of this suit he prays judgment as well as for any and all other and further relief to which the plaintiff may be entitled in the premises.

"T. G. Rechow, Plaintiff."

We do not set out in full here the copy of the certificate attached to the petition.

The record before us shows that on the 14th day of November, 1930, the defendant in that suit, relator here, filed in the Cedar county circuit court its demurrer to the petition, which demurrer, caption and signature omitted, is as follows:

"Comes now the defendant and files this its demurrer, to plaintiff's petition, and as grounds for such demurrer, states:

"1. Because the plaintiff in his petition seeks the judgment of the court, and the relief thereby, which would require the exercise of this court, of visitorial powers over and to control the internal management of a foreign corporation, to-wit a corporation organized under the laws of the State of Iowa, with its domicile in that state, which it is respectifully submitted this court has no right or authority or power to do.

"2. Because, before the court can grant the relief prayed for the plaintiff in this case, and in his petition attempted to be set forth, and before this balance, if any, that is due, the plaintiff could be ascertained, there must be a complete visitation of the defendant corporation, a thorough inquiry into all of its affairs, and the ascertainment not only of the condition of the account of the corporation with this plaintiff, but of the account of all of its members who now have, or ever have had, policies on the assessment plan, regardless of the number of them, or through the number of states in which they may be scattered, this being a mutual assessment company, and the accounts of all are involved in the account of one, and it is respectfully submitted that this court is without authority to make such ascertainment, visitation and examination.

"3. Because this plaintiff, under the terms of his petition and under the claimed breaches and violations of the pretended contract seeks a money judgment which cannot be rendered unless there first be an accounting involving the visitation of this defendant, which is a foreign corporation, and because this court is without authority to make or require such accounting.

"4. Because, before the plaintiff can have judgment in this case, this court must determine the reasonableness of the rates of assessment charged by this defendant against the plaintiff, and must likewise examine into the apportionment and disposition of surplus or reserve fund, mentioned in the petition, involving as is alleged, eight millions of dollars, and must likewise determine whether or not the distribution of said fund was equitable as among the various members of said association, or company or otherwise.

"5. Because this court must, before it can find for the plaintiff in this case on the petition filed, inquire into the rates charged by this defendant to the plaintiff, the reasonableness of any increases made therein, and whether the same were lawful, and must further ascertain the amount of any surplus or reserve funds in the hands

of this defendant, to whom the same were distributed, and whether lawfully, and whether this plaintiff was unfairly treated in the matter of assessments in the distribution of such surplus or reserve funds.

"6. Because it is admitted in this petition that the plaintiff ceased paying his assessments on the pretended ground that the rates charged him were excessive, and illegal, and because the distribution made of the surplus or reserve funds by the defendant, was unlawful and without authority, and before the court can pass on the issue so raised, it must examine into each and both of said matters, the doing of which would involve the exercise by this court of visitorial powers over the management and conduct of a foreign corporation of its internal affairs, which it is respectfully submitted, this court has no jurisdiction to do.

"WHEREFORE the defendant respecfully states that this honorable court is without jurisdiction to try and determine the issues raised and attempted to be set forth by and in plaintiff's petition in this cause, and it prays that this, its demurrer, be sustained, and that it go hence without cost."

The relator in its petition for the writ of prohibition in addition to the sworn copy of the certificate of insurance issued to Rechow, has attached to its petition the Articles of Association and by-laws referred to in said certificate as being a part of the contract issued to Rechow and has attached a copy of the letter referred to in his petition.

The respondent Rechow contends that there are only three things, to be proved, if he should be permitted to go to trial, in order to win, and that these may be presented sufficiently to a trial court without having to go to a foreign state for an accounting. These three things have been mentioned heretofore. Let us consider them now. Was there a contract as alleged, and was it breached, and had he made the payments as alleged? There is no doubt that he could prove the payments without an accounting. The other two questions are the difficult ones. In his petition he alleges a contract. In the first paragraph of his petition he says that the defendant (relator here) was licensed to do business in the state of Missouri as a life insurance company on the *assessment plan*. His petition refers to a benefit fund, and in his petition he refers to a letter written him in 1911, and alleges that in this letter certain assurances were made to him and but for the assurances made by the defendant to him in that letter he would have quit paying at that time, but because of the assurances made then, he continued to pay until in 1927 when he learned that the defendant was no longer dealing with him in keeping with the provisions and assurances in the letter written

him in 1911, and that he paid one thousand dollars after receiving the letter in 1911.

We think it may safely be said that prohibition will not be granted if the petition reasonably shows that the circuit court has jurisdiction of the subject-matter and the parties.

Under the regulations of this State the defendant in order to do business in Missouri, had to submit to jurisdiction of the courts of this State for certain purposes. This petition is for the return of money paid by the plaintiff under a contract and agreement which he pleads he had with the defendant, and which contract and agreement he says was broken.

We are not interested in the merits of this case, nor in the amount of recovery, if in fact a recovery may be had for any amount, without an accounting.

If a judgment may be had for any amount under this petition whether for return of all the premiums paid, or for return of those paid after the letter written in 1911, or for merely nominal damages under a breach of the contract, then the writ should not go and the respondent Rechow should be permitted to proceed with his trial.

The relator in the brief and oral argument relies mainly upon two cases heretofore cited by us, namely State ex rel. v. Denton et al., and State ex rel. v. Shain et al. In the Denton case the petition is in the nature of a bill in equity complaining of relator's mismanagement of the business as a life insurance company, and asks for a judicial investigation of the affairs, and seeks the appointment of a receiver to conduct its business. In that case the plaintiff was seeking to have a receiver appointed in this State to go to Minnesota and take possession of a certain fund there so as to protect his interest under three policies which he held.

No such plan is made in the petition under consideration here. No receivership is sought; no attempt is made to ascertain how the affairs of the company are managed, and no attempt is made to preserve the property of the defendant for the benefit of the plaintiff or any other person.

In the Shain case the allegations are similar to those in the Denton case, and was an attempt to enjoin the defendant from assessing the plaintiff upon his contract at a rate in excess of the amount he claimed was correct, and a prayer for an accounting to the plaintiff in excess of said rate, and that the plaintiff have judgment against the defendant for the sum so found to be due the plaintiff upon such accounting. It will be seen that in both of these cases an accounting was sought, and it was alleged and determined by the courts, that an accounting was necessary and that it would be necessary for the courts of this State to go into a foreign state to determine what was just and equitable under such accounting, and

that because such was necessary, and so shown from the pleadings, it must follow, that since our courts had no such power or jurisdiction that the writ should issue.

But in the present case, if any cause of action be stated, that may be proved without exercising the visitorial powers of our courts, then the writ should not issue.

As we view the petition here, it seems that there are three possibilities under which the plaintiff may proceed; first, a suit under the contract, embracing all the terms of the contract including the articles of association and by-laws of the company, together with the legality of the conduct of the board of directors in making the assessments against the plaintiff. This would of necessity require a full and complete accounting, to accomplish which the court would have to exercise visitorial powers, which under the holdings of our courts could not be done. Second, under the allegations of the petition that the plaintiff relied upon the representations of the defendant in its letter of October, 1911, and continued to make payments of assessments until 1927, paying in the aggregate one thousand dollars after 1911. He alleges that, but for the statements and representations of defendant, these would not have been paid. Under this allegation of the petition especially with reference to representations made to the plaintiff in 1911, and his continuing to pay because of such representations, as well as the breach thereof, if any, we can think of no reason in order to determine these facts, for the use of the visitorial powers of the court, or why it should be necessary to go into an accounting of the whole affairs of the insurance company. These are allegations possible of proof by witnesses here or by means of depositions without an accounting. Because we so view the petition here with reference to his part of the petition we think the writ should not issue.

What we have said is also applicable to nominal damages, if any, for breach of contract.

It follows that the writ should be denied. It is so ordered. *Cox, P. J.,* and *Bailey, J.,* concur.