THE STATE ex rel. HARTFORD LIFE INSURANCE COMPANY v. HOPKINS B. SHAIN, Judge, and PETER COURTNEY.

In Banc, July 2, 1912.

**JURISDICTION: Visitorial Powers: Foreign Insurance Company: Assessment of Illegal Rates.** The courts of this State have no jurisdiction to enjoin a foreign insurance corporation domiciled in another State from assessing one of its policy holders a rate of assessment in excess of the stipulated rate according to age set out in the contract of insurance, and to order an accounting of such foreign corporation's business affairs for the purpose of determining therefrom whether or not said policy holder has been and is being charged excessive and illegal premiums. To do that it would be necessary for the court in this State to investigate, overhaul and control the management of the internal affairs of a foreign corporation, and no court has jurisdiction to do that except the courts of the company's domicile. Even if the court should render judgment in that behalf, it has no power to enforce it, since the officers of the company refusing to obey it are beyond the reach of its process; and a court never does an idle thing.

Prohibition.

WRIT ALLOWED.

*Jones, Jones, Hocker & Davis* and *Montgomery & Montgomery* for relator.

(1) The courts of one State will not exercise visitorial power over the internal affairs of a foreign corporation; and they will refuse to grant relief in cases where they cannot compel the performance of

their decrees. State ex rel. v. Denton, 229 Mo. 187; Clark v. Association, 43 L. R. A. 390; Taylor v. Association, 97 Va. 60; Howard v. Association, 125 N. C. 49; Condon v. Mut. Res. Assn., 89 Md. 99; 19 Cyc. 1236-8; Sideway v. Missouri Co., 101 Fed. 481; 13 Am. & Eng. Ency. Law 849; Fraternal Union v. Lundy, 113 S. W. 185; 14 Cyc. 308. (2) Prohibition is the proper remedy under the circumstances disclosed by the record. State ex rel. v. Denton, 229 Mo. 187; State ex rel. v. Reynolds, 209 Mo. 177; Appo v. People, 20 N. Y. 531; State ex rel. v. Williams, 221 Mo. 227; State ex rel. v. Elkins, 130 Mo. 105; State ex rel. v. Fort, 210 Mo. 525; State ex rel. v. Sale, 188 Mo. 497; State ex rel. v. Stover, 126 Mo. 655; State ex rel. v. Wood, 155 Mo. 425; State ex rel. v. Withrow, 154 Mo. 397; State ex rel. v. Oloe, 152 Mo. 466; State ex rel. v. Denton, 128 Mo. App. 314; State ex rel. v. Spencer, 166 Mo. 271; State ex rel. v. Dillon, 96 Mo. 56; State ex rel. v. Dearing, 180 Mo. 69; State ex rel. v. Barnett, 111 Mo. App. 558.

*Orville M. Barnett* for respondent.

(1) No exercise of visitorial power over the internal affairs of foreign corporation would be required to prove allegations of petition below. Pfeffer v. Ins. Co., N. Y. L. J., July 28, 1911, p. 1851; Harrison v. Ins. Co., 63 Misc. N. Y. 93, affirmed 201 N. Y. 35; Castagnino v. Mutual Reserve, 157 Fed. 29; Guilford v. Western Union, 59 Minn. 332; Straus v. Mutual Reserve, 126 N. C. 971; Ebert v. Mutual Reserve, 81 Minn. 116; Benjamin v. Mutual Reserve, 146 Cal. 34; 19 Cyc. 1238 (3); 13 Am. & Eng. Ency. Law, 849 (14); Pierce v. Ins. Co., 145 Mass. 56; Art. 12, Ch. 21, R. S. 1909. (2) The courts of Missouri are not without power over foreign insurance companies should an injunction be granted and that injunction ignored. R. S. 1909, Sec. 7069; 22 Cyc. 1022; Eureka Co. v. County, 116 U. S. 410; 22 Cyc. 1012. (3) A demurrer

to the petition will not lie because some of the relief prayed is beyond the power of the courts to grant. Liese v. Meyer, 143 Mo. 547; Crosby v. Bank, 107 Mo. 436; Henderson v. Dickey, 50 Mo. 161; McGlothlin v. Henry, 44 Mo. 350; 31 Cyc. 297. (4) The policies are Missouri contracts and will be construed according to the laws of Missouri. Daggs v. Ins. Co., 136 Mo. 382; State ex inf. v. Oil Co., 194 Mo. 149.

WOODSON, J.—This is an original proceeding begun in this court by the petitioner, seeking to prohibit the respondent, as judge of the circuit court of Pettis county, from further proceeding with the trial of the case of Peter Courtney against the Hartford Life Insurance Company (a mutual concern), pending in said court.

The substance of the charges made in the petition in that case is that the plaintiff entered into a contract with the defendant, by which it insured his life, for a certain sum, evidenced by a certificate of membership, dated January 27, 1882, for and in consideration of the premiums stated in a table of rates stated in said certificate, which rates vary according to the age of the insured and the amount of outstanding insurance in force at the time each quarterly assessment is made.

Said table of rates is as follows:

"Table of Graduated Rates for Death Losses for Every $1,000 of a Total Indemnity of $1,000,000.

| Age. | Rate. | Age. | Rate. | Age. | Rate. |
| --- | --- | --- | --- | --- | --- |
| 15 to 21 | $0.65 | 35 | $0.97 | 49 | $1.40 |
| 22 | .67 | 36 | 1.00 | 50 | 1.47 |
| 23 | .69 | 37 | 1.03 | 51 | 1.54 |
| 24 | .71 | 38 | 1.06 | 52 | 1.63 |
| 25 | .73 | 39 | 1.09 | 53 | 1.72 |
| 26 | .75 | 40 | 1.12 | 54 | 1.81 |
| 27 | .77 | 41 | 1.14 | 55 | 1.92 |
| 28 | .79 | 42 | 1.16 | 56 | 2.03 |
| 29 | .81 | 43 | 1.18 | 57 | 2.15 |
| 30 | .83 | 44 | 1.20 | 58 | 2.32 |
| 31 | .85 | 45 | 1.22 | 59 | 2.50 |
| 32 | .88 | 46 | 1.25 | 60 | 2.68 |
| 33 | .91 | 47 | 1.30 | | |
| 34 | .94 | 48 | 1.35 | | |

At the bottom of this table was the following statement:

"These rates decrease in proportion·as the total indemnity in force increases above one million dollars in amount, and are calculated so as to cover the usual expense for collecting."

The plaintiff alleges, "that on the 25th day of January, 1896, he reached the age of sixty years, and since that date the defendant has fraudulently assessed the plaintiff on each of the five certificates or contracts, which he held in defendant's company, in excess of $2.68 for every $1000 on a total indemnity of $1,000,000, and 'prays judgment against defendant (1) that the defendant be perpetually enjoined from assessing the plaintiff upon his contract at a rate in excess of $2.68 per $1000 on a total indemnity of $1,000,000; (2) that the defendant render an accounting to the plaintiff in excess of said rate since the 25th day of June, 1896, with interest upon each excessive payment since the date of said payment; and (3) that the plaintiff have judgment against the defendant for the sum so found to be due the plaintiff upon such accounting, and that the plaintiff have such other and further relief as may to the court seem just and equitable, besides the costs and disbursements of this action.' "

The defendant appearing specially demurred to this petition on the ground that the court had no jurisdiction of the person of the defendant or the subject of the action, nor jurisdiction to grant the relief therein prayed for, which demurrer was overruled by the court, of which the respondent H. B. Shain is the judge.

The petition for the writ filed in this court charges that the circuit court of Pettis county has no jurisdiction of the defendant in that cause for the reason that the remedies sought, if granted, would interfere

with and disturb the internal affairs of the petitioner company, a corporation of Connecticut, with its principal office and officers located in that State; also for the reason that said court has no jurisdiction to grant the reliefs prayed for by the plaintiff in that case.

Shortly after the circuit court overruled the defendant's demurrer to the plaintiff's petition in that cause, the former filed in this court its petition in this cause for a writ of prohibition.

After due consideration, the preliminary rule was granted and duly served upon the respondent. In due time he filed his return, admitting the facts pleaded, but tendered issues of law upon the facts. Thereupon, the petitioner moved for judgment upon the pleadings.

I. The facts of this case are admitted and are embraced within a small compass, and thereupon are predicated, for determination, but two legal propositions, namely: First, has the circuit court of Pettis county jurisdiction to order an accounting of the petitioner's business affairs, and to determine therefrom, whether or not the plaintiff, in the case of himself against the petitioner, pending in said court, has been, and is being charged excessive and illegal premiums upon his policy of insurance; and, second, if so, has said court jurisdiction to render judgment for the excessive sums so paid and to enjoin the future collection of said excessive premiums?

The latter proposition depends upon the former, and whichever way that question is disposed of will largely control the disposition of the latter, consequently, we will consider the propositions in the order stated.

Counsel for respondent has with much care and due deliberation, stated the rule, which in his opinion should govern the interpretation of the policy of insurance, in question, regarding the premiums due

thereunder, but he cites no authority whatever in support of his position.

It seems to us that learned counsel has misconceived the object and purpose of this proceeding. The questions involved, as previously stated, challenge the jurisdiction of the circuit court of Pettis county to pass upon the propositions stated, and not the correctness or incorrectness of the interpretation to be given to the policy of insurance mentioned in the evidence. If it has not the jurisdiction to pass upon those questions, then it would be useless to announce the rule of interpretation which is to govern the policy, for the simple reason that it would have no force or effect whatever, even though it should be conceded that the correct rule should be announced and the proper decree entered.

The principal proposition here presented for determination is not a new one. It has been before this court, and other courts of this country in a number of cases; and so thoroughly and ably has it been considered, that there remains but little, if anything, new, that can be said upon the subject. We will, therefore, be content, with the disposition of the question, by quoting from a few of the opinions of some of the courts passing upon the question.

The case of Clark v. Mutual Reserve Fund Life Association, 14 App. District of Columbia, 546, involved this precise question. There the company was a mutual concern, organized under the laws of New York; and the plaintiff who held a certificate of membership therein, brought suit in the District of Columbia, against the defendant, charging in the bill that the defendant company had illegally and contrary to the contract of insurance, adopted an arbitrary and unauthorized method of levying assessments, and in pursuance thereto was levying, and was threatening to continue to levy, illegal and excessive assessments against the plaintiff and his co-members; that said

illegal and fraudulent assessments had been, and were being made, and enforced as a part of a scheme on the part of the officers and directors of the company to force plaintiff and other members either to pay such fraudulent and excessive assessments for their insurance, or to drive them out of the company and compel them to forfeit all moneys that had been paid in and contributed thereto.   The relief asked was:

1.   Injunction to restrain the defendant and its agents from levying illegal and excessive assessments in the future.

2.   Discovery and the proper ascertainment of the correct and true amounts that should have been levied upon the plaintiff and other members, and that an accounting be had between the plaintiff and defendant in that regard.

3.   That the court determine the true and proper amount of the assessments that should have been levied, and that the defendant be compelled to refund the unauthorized excess.

A demurrer was filed by defendant to the bill upon the ground that the court for the District of Columbia had no jurisdiction to entertain a suit by plaintiff, a member of the defendant association, to grant the relief sought against a foreign corporation, which demurrer was sustained and plaintiff appealed.   The Court of Appeals held that the courts of the District of Columbia were without jurisdiction in the premises, and said:

"But apart from this defect in the bill, in considering the case on demurrer, there is a broader and more insuperable objection to the bill than that just referred to, and that is the want of jurisdiction in the court to extend its remedial processes to restrain and control the internal affairs and administration of corporate duties and functions of the defendant, a foreign corporation.   It was upon this ground that

the court below acted in sustaining the demurrer and dismissing the bill.

"The principal ground of complaint appears to be the alleged or supposed illegal enhancement of the rate of assessment levied and collected of the plaintiff, over and above the rate specified in the table of rates indorsed upon the certificate of membership. This increased rate of assessment would appear to be the result of a change of policy on the part of the defendant association, founded upon a supposition that it was inequitable and unjust that the assessment should be based upon the age of the member at the time he obtained his certificate of membership and the just and more equitable rule would be to make the assessment with reference to the age of the member at the time the case is made. This may, and certainly would appear to, work great hardship upon the older class of members. But the question is, has a court of equity in this district the power or jurisdiction to correct the wrong, if it be one? If this were an action to recover money due on the policy, or an action by the defendant association to recover money due for assessments, or any money of one party to the other, then, in all such cases, and others that might be suggested, instituted in the courts of this district, the jurisdiction of the court of equity here might be invoked to prevent injustice and wrong. In all such cases the party aggrieved has the right to sue and obtain effective remedy against foreign insurance companies, having an agency here and doing business in this district. This is provided for by the Act of Congress of 1887, Ch. 46, Sec. 4, 25 Stat. at L., p. 369. That act provides for the due appointment of an agent in this district as a condition upon which a foreign, insurance company is allowed to do business here—the agent being made competent to receive service of process in suits against the company appointing him. But that manifestly does not contemplate or apply to cases such

as the present. It does not contemplate suits here against foreign insurance companies, the object and effect of which would be to restrain their home administration, and to ransack and overhaul their internal affairs, in order to determine whether their proceeding has been in all respects legal and in accordance with the law of their creation, and of their by-laws, as they may affect their individual members. It is clear the Act of 1887 does not attempt to make foreign insurance companies, doing business here under this statute, corporations of this district. For, as said by the Supreme Court in the case of Pennsylvania Ry. Co. v. St. Louis A. & T. H. Ry. Co., 118 U. S. 290, 'To make such a company a corporation of another State, the language used must imply creation or adoption in such form as to confer the power usually exercised over corporations by the State, or by the Legislature, and such allegiance as a state corporation owes to its creator. The mere grant of privilege or powers to it as an existing corporation, without more, does not do this, and does not make it a citizen of the State conferring such powers.' The Act of 1887 contains no language that could imply creation or adoption of these foreign insurance corporations, but only the grant of privileges or powers to existing corporations of other jurisdictions, upon complying with certain conditions. The class of laws granting such privileges and powers, say the Supreme Court, in the case just referred to, 'are common in authorizing insurance companies, banking companies and others to do business in other States than those which have chartered them.' Such acts do not extend the jurisdiction of the courts of one State and authorize them to reach over their territorial limits into the jurisdiction of another State, and bring into review and revision the corporate acts and internal affairs of the local corporation of the latter States. Such a power if attempted to be exercised would be futile and ridiculous. Indeed,

neither the Legislatures of the States, nor the Congress of the United States, could confer such powers.

"In this case, it is proper to observe the prayer of the bill. The prayer is that an injunction may issue to restrain the defendant and its agents from collecting any sum upon call No. 97, dated April 1, 1898, and upon all subsequent calls in excess of the rate in force at the date of the certificates of membership issued to the plaintiff, and from in any manner declaring lapsed or void the policy or certificate held by the plaintiff, and commanding the defendant to retain the plaintiff as a member and policy holder in good standing during the pending of this suit, with the same force and effect as if he had paid all calls or assessments.

"Now, in the first place, all assessments and dues, required to be paid by the certificate holder, as also the amount of the policy itself by the defendant, are payable and are required to be paid, at the home office of the defendant in the City of New York, and this being so, it is a little difficult to imagine how a court in this State could restrain and direct the action of the corporation at its home office in the City of New York. Suppose the injunction be issued as prayed, and to be served upon an agent in this district, and the board of directors of the corporation were to refuse to recognize it, and proceed to forfeit and declare null and void the certificate or policy of the plaintiff, for default of payment of assessments, as according to the terms of the certificate they are authorized to do—how would or could the court in this district deal with such conduct? For the disregard or violation of an injunction the ordinary remedy is a proceeding and punishment for contempt. But how can this be made effectual as against parties beyond the jurisdiction of the court and who claim to be proceeding in accordance with what may be legal authority derived from

their own State. It is very clear, therefore, that this prayer for an injunction cannot be granted.

, "The next prayer is that the defendant be required to discover to the plaintiff its books and accounts showing losses, mortality, expenses and particularly the salaries of each individual officer of the association, assessments and matters and things incident thereto, since the plaintiff became a member of the association, etc., whereby correct and true assessments and amounts which should have been at all times levied upon the plaintiff and other members of the association may be ascertained, and that an accounting be had between the plaintiff and defendant.

"It is hardly necessary to say that a court of equity in this district has no such power or jurisdiction over the affairs of a foreign corporation as to require such a discovery and accounting as prayed for in this bill. Upon such a theory as is here propounded, no corporation could ever venture to conduct business beyond the limits of the State of its creation. According to the principle of this prayer, any business transaction of an insurance company which might take place in a State other than that of the company's creation, and which could be alleged to affect the assets of the company, and the interest of its members, would furnish the ground for calling for discovery, the production of books, and for a general accounting. Upon any such principle it would be very perilous for any insurance company to attempt to do business beyond the limits of the State of its creation. It might have half a dozen courts in as many different States, requiring discovery and demanding the production of books, and directing the statement of accounts, all at the same time. There is no principle that would justify such a proceeding.

"Then again it is prayed that the true and proper amount of assessments be made and determined, and that it also be determined what amount the plaintiff

has already paid in excess of the rate of assessment that should have been levied upon him, and that the defendant be compelled to refund the same, and that there be directed and required to be made a proper application of the reserve fund, in accordance with the requirements of the certificates of membership.

"This prayer, like the preceding, requires a complete overhauling and scrutiny of the entire administration of the internal affairs of the corporation, from the time that the plaintiff became a member down to the present time, and nothing short of a full and complete account would enable the court to decree in accordance with the prayer.

"It is thus apparent from the statement of the facts alleged in the bill, and from the several prayers based thereon, that the relief sought, if it should be granted, would require the control, direction and revision of the internal affairs of the corporation by a court of equity of this district. This, we think, upon authority, cannot be done. The law would seem to be too well settled to admit of such a question, that where the acts complained of affect the plaintiff in his rights of corporator, or stockholder, or as a member of a mutual benefit insurance company, or other corporation, and the acts are those of the corporation, done and performed in the course of the administration of the corporate affairs, and especially when claimed to have been done and performed, or authorized to be done, by virtue of authority derived from its by-laws, the courts of another State or jurisdiction will not interfere or attempt to exercise jurisdiction, to direct, control or revise corporate action. To assume jurisdiction over the affairs of a foreign corporation would inevitably lead to conflicting decisions, resulting in confusion and needless litigation, and the making of orders and decrees simply to be contemned, because not capable of being enforced. The court, if it were to undertake to act in such cases, has no power, and

therefore cannot bring the officers or the corporate books or the assets of the corporation within its jurisdiction, to be subject to its process. Its decrees could only be enforced by proceedings for contempt, and yet there would be no person here, subject to that process, to be coerced to act for the corporation. The mere local agent, clearly, would not be such person. It may well be said, therefore, as was said by the court in the case of Leary v. Columbia River & P. S. Nav. Co., 82 Fed. 775, on an application very analogous to the present that 'the authorities cited by counsel for the defendant corporation show clearly and strongly that courts having jurisdiction to enforce their decrees in the State where the corporation has its home office should be resorted to in all cases where it is necessary to inquire into and regulate the internal affairs of the corporation' and not to courts of a different State of jurisdiction.''

The same principle was recognized and approved by this court in the case of State ex rel. Minnesota Mutual Life Insurance Company v. Denton, 229 Mo. 187. In discussing that question Judge VALLIANT, in a clear and able opinion, in speaking for the entire court, on page 195, said:

''From this return it may be inferred that the learned judge in overruling the demurrer did not construe the petition as one aimed to bring about a visitation of the affairs of the relator, but only to obtain a money judgment for a balance found to be due plaintiff after such an accounting as a court of equity could cause to be made.

''It is within the scope of equity jurisdiction to cause an accounting to be made under some circumstances and to render judgment for the balance ascertained. But the money judgment is to follow the accounting and if the conditions surrounding the case are such as to put the accounting beyond the reach of the court it has no jurisdiction to render a money

State ex rel. v. Shain.

judgment, . . . but if the accounting is such that the court has no power to make, and would involve destruction of rights which could not be restored, an appeal would be of little if any avail. In this case before the balance, if any, that is due the plaintiff could be ascertained, there must be a complete visitation of the corporation, a thorough inquiring into all of its affairs and an ascertainment not only of the condition of the account of the corporation with this plaintiff, but of the account of all its members who now have or have ever had policies on the assessment plan, no matter how numerous they may be, or through how many States they may be scattered, because this is a mutual concern and the accounts of all are involved in the account of one. Such an accounting is not beyond the jurisdiction of a court of equity that may have full jurisdiction of the corporation, but it is beyond the jurisdiction of a court of equity that has only the limited or qualified jurisdiction over a foreign insurance company that is given by our laws to our courts. When license is granted a foreign insurance company to do business in this State, one of the conditions on which the license is granted is that it name an agent on whom service of process may be made, so that it may be called into court to answer a suit on a contract, and our courts have ample jurisdiction to compel performance of obligations by such companies. Nor are our citizens wholly without the right to have the internal affairs of such corporations examined and their methods of business, and their ability to perform their obligations ascertained, and their abuses, if any, corrected, without going into another State for that purpose; but that power is lodged in the Superintendent of Insurance, who may, until he has been allowed to make the examination and is satisfied, refuse to grant a license, or having granted, may, for good cause, revoke it. But beyond the power of the court to enforce the performance of a contract

and beyond the power of the Superintendent of Insurance to correct the evil, if a citizen of this State wants further redress involving a judicial investigation into the affairs of the foreign corporation of which he is a member, he must go to a court in the State where the corporation is at home.

"A court of equity never does a vain act, it never decrees what it cannot compel to be performed. If this were a domestic corporation the court could decree such an accounting as prayed, appoint its commissioners to go to the office of the corporation and overlook and examine all of its books, appoint a receiver, if it deemed proper, to take possession of all its assets and administer the same under the direction of the court *pendente lite,* and if the corporation or its officers should refuse to surrender its books or assets, there would be sufficient executive power forthcoming at the call of the court to enforce its decree. But the commissioner or the receiver in such a case is but the representative of the court; he is, while he keeps within his decrees, *pro hac vice,* the court. Where he goes the court goes and what he does the court does. Can the circuit court in this case, in the person of its representative, go to Minnesota and take charge of the affairs of this corporation there? If the corporation should refuse to turn over its books to the commissioner or its money to the receiver, what could the court do? A court has no right to put itself in a position where its orders may be treated with contempt; the very fact that it could not force obedience shows its lack of authority to render the judgment.

"There are, according to the question, a large number of holders of policies like those held by the plaintiff, scattered, perhaps, over many States, each of whom has as much right to bring a like suit in his State as the plaintiff has to bring this suit. Each of those many policy holders would have an interest in each of the many suits, because in a mutual concern

the interest of one cannot be determined without determining the interest of all, or at least the basis on which the interest of all must be calculated. It would be a strange system of law that would involve a concern in such confusion. If such were the law no insurance company would venture to do business outside of its own State.

"It would be impossible for the circuit court to render an intelligent judgment for the money which the plaintiff says he has been unlawfully compelled to pay in excess of the legitimate assessments, without entering into the elaborate accounting above indicated, and since the court has no jurisdiction to make such an accounting it has no jurisdiction to render such a money judgment."

In the case of Condon v. Mutual Reserve Fund Life Association, 44 L. R. A. 149, 89 Md. 99, decided by the Court of Appeals of Maryland, in which, among other things, the plaintiff prayed for an injunction and an accounting against defendant for so-called excessive assessments, the court said: "No court could declare them excessive until it knew what sum was not excessive; and no court could decide what sum was not excessive until it was placed in the full possession of all the facts pertaining to the whole internal conduct of the company. These observations also apply to the charges of the bill in respect to the amount of the reserve fund bonds issued to Condon. It is alleged that a true accounting will show him entitled to bonds for larger amounts. A true accounting can only be had by an examination of all the entries relating to this fund, and by correcting errors, if any there are. Obviously, this would involve a control of the company's internal affairs by the agency of an injunction issued by a Maryland court, though that court possesses no power to enforce the injunction if its commands were treated with contumely by the corporation."

The case of Taylor v. Mutual Reserve Fund Life Association, 45 L. R. A. 621, was a suit in the courts of Virginia by Taylor, a member of the defendant company, organized under the laws of the State of New York, alleging the levying of illegal and fraudulent assessments in violation of the provisions of the policy, and praying that the defendant be required to make an exhibit of the company's books and papers so it could be determined what would be the proper rate of assessment, and when such was determined the court should decree that the company should receive such assessments and keep the certificate of membership in force, and that it be enjoined from levying assessments other than in accordance with the standards fixed by the court, and that the company be required to exhibit a list of all its certificates of membership in force at a given date, and that generally an accounting be had between the parties. This bill was demurred to on the ground that the case stated and the relief prayed would require the court to interfere with the internal management of a foreign corporation at the suit of a member, a subject-matter over which it has no jurisdiction. The demurrer was sustained and the plaintiff appealed to the Supreme Court and the action of the lower court in sustaining the demurrer was upheld. And in doing so, the court said:

"The wrongs complained of by the appellant in his bill, briefly stated, are the imposition of illegal assessments upon him and other members of the association over sixty years of age. . . .

"Not only are the acts complained of, acts which relate to the internal management of the association, but the relief sought, if granted, would require the courts of this State to control and overhaul that management.

"The first prayer is that the association be enjoined and restrained from taking any proceedings to

have the appellant's certificate of membership or policy of insurance declared lapsed or forfeited. This prayer is based upon the allegation that the association had threatened to declare it forfeited if he did not pay what is charged to be an illegal and extortionate assessment.

"If the court were of opinion that the assessment was invalid, how could it restrain and control the association at its home office in the State of New York, where the assessments were to be paid. It would have no power to enforce its restraining order, if the association refused to obey it. It is clear that an injunction ought not to be granted which cannot be enforced. [Cases cited.]

"Another prayer of the bill is that the association be required to exhibit its books, papers and vouchers, and furnish a list of its policy holders, for the inspection of the appellant, in order that he might ascertain from them whether or not there has been any fraudulent misappropriation of the assets of the association by its officers and agents, and in order that the court could determine what would be a reasonable rate of assessment upon the appellant, and, when it had determined what would be a reasonable rate, to decree its payment, require the association to receive it, give receipts therefor and to keep his policy alive, or to issue him one of its new policies. In order to grant such relief it would be necessary for the court to investigate, overhaul and control the management of the internal affairs of the association. It is manifest that the courts of no State other than that of the domicile of the foreign corporation ought to attempt to exercise any such power over it. To do so would render it dangerous, if not impossible for a corporation to do business beyond the limits of the home State. Its books and papers might be required at the same time in the courts of many or all of the States in which it was doing business. Each of these courts, after over-

hauling its internal management, to see what would be a reasonable rate of assessment, might determine that question differently, thus leading to confusion and injustice in the administration of the internal affairs of the corporation. Courts, even if they had such power, would be slow to exert it when its exercise would lead to such results, but would leave the parties to litigate their rights in the courts of the State under whose laws the corporation has been created and where such matters could alone be properly settled. . . .

"The counsel for the appellant insists that, although this court may not be able to grant all the relief prayed for, it ought to construe appellant's contract with the association, and determine what his rights are under it, and thus render those questions *res adjudicata;* this contention cannot be sustained. The case made and the relief sought not being within the jurisdiction of the court, it has no power to construe the contract. Whenever a court determines that it has no jurisdiction of a case, it should express no opinion on the merits of the controversy. The only course which a court can rightfully pursue in such a case is to decline to speak at all where it cannot speak by the law."

The principle announced in the last clause of the foregoing opinion was enforced by this court in Banc, on June 10, 1912, in an opinion by GRAVES, J., in the case of State ex rel. v. Grimm, 243 Mo. 667.

And in discussing the same principle, which was involved in an injunction case, brought by Lunday, a resident of the State of Texas, to restrain the Royal Fraternal Union, a Missouri corporation, from forfeiting and cancelling a policy of insurance, for reasons stated, which the plaintiff claimed to have held in said defendant company, the Texas Civil Court of Appeals, 51 Tex. Civ. App. 640, said:

"It thus appears, from the allegations of the appellee, that he is asking a court of equity in this State

to enjoin the officers and agents of a foreign corpora-
tion domiciled in another State from doing certain acts
in and about their business affairs in that State. The
court below having granted the relief prayed for, let
us suppose that this court should affirm the judgment.
The question would then arise: How is such a decree
to be enforced in the event the officers and agents of
the appellant company should persist in doing the acts
prohibited? Such a judgment could only act *in per-
sonam,* and obedience to the court's mandate can be
compelled only by an attachment of the body of the
contumacious individuals and the infliction of some
punishment. In the case before us, all of the parties
against whom the order of the court is directed, are
permanently domiciled beyond the territorial jurisdic-
tion of the court, and cannot be reached by any process
issued therefrom. It is therefore evident that such a
decree would be utterly futile. . . .

"It is true that there are instances in which a
court of equity situated in one State will enjoin the
performance of acts beyond its territorial jurisdiction,
but this seems to be limited to cases where the parties
against whom the injunction is sought reside within
the jurisdiction of the court. Such judicial restraint
imposed upon the conduct that may be enacted
beyond the jurisdiction of the court are predi-
cated upon the principle that such judgments are in-
tended to operate only upon the person, and that, if
the parties against whom they are directed are within
the jurisdiction of the court, the decrees can be en-
forced and are not considered an interference with the
jurisdiction of any other tribunal over the subject-
matter of the controversy. It would seem that if the
justification for the exercise of this power is to be
found in the fact that the party defendant resides
within the territorial jurisdiction of the court render-
ing the decree, it would follow that no such authority

would be exercised where this situation does not exist.'' See Hewitt v. Price, 204 Mo. 31; Cole v. Cunningham, 133 U. S. 107.

If such companies persistently violate the terms of their policies of insurance in the manner charged, for instance, in the case of Courtney v. Hartford Life Insurance Company, pending in the circuit court of Pettis county, then as Judge VALLIANT justly observed in the case of State ex rel. v. Denton, supra, the aggrieved party may appeal to the Insurance Department of the State, which has plenary power to redress the wrongs done, if any; or if such party is satisfied that the terms of his policy are being illegally violated, then he can protect his rights by tendering to the company the sums actually due under the terms of his policy, as they become due, instead of paying said illegal and excessive quarterly assessments made and demanded of him, and at the maturity of the policy, the company would be as fully liable on the same, as if it had accepted the same, and had not exacted the illegal and excessive assessments.

In this, however, he would act at the peril of being incorrect in the amounts tendered.

II. The conclusions just announced in paragraph one of this opinion, for all practical purposes, also dispose of the second proposition stated at the beginning of this opinion, and we will for that reason withhold all further observations upon that branch of the case.

Entertaining these views of the law, in our opinion, the circuit court of Pettis county, has no jurisdiction to take the accounting prayed for, nor to grant the relief asked.

We are, therefore, of the opinion that the preliminary rule in prohibition heretofore issued. should be made perpetual; and it is so ordered.

All concur.