GENE THOMAS, Defendant in Error, v. EQUITABLE
    LIFE   ASSURANCE   SOCIETY,   Plaintiff   in
    Error.

Kansas City Court of Appeals, February 18, 1918.

1. **LIFE INSURANCE POLICY**: Green Slip Attached: General Agent:
   Illustration.   A general agent of a life insurance company repre-
   sented to one whom he was soliciting to take out a life policy for
   $1000 paid up in twenty years that at the end of that period he had
   certain privileges in cash, or he could choose a paid-up policy for
   $1830 and that a paper to that effect, known as a "green slip"
   would be attached to the policy.  The assured was thereby induced
   to apply for a policy, and when such policy was delivered to him
   it had the "green slip" attached whereby it was stated that the
   assured had the privileges the agent had represented; the slip was
   *held* to be a part of the policy, notwithstanding the statement
   therein that it was merely an illustration of what the assured priv-
   ilege might be.

2. ———: Surplus: Trust Fund: Account.  The surplus accruing under
   a life insurance policy paid-up in a given number of years, is a
   trust fund accruing and growing in the hands of the company for
   the benefit of the assured, and the company must account for it as
   trustee, and it cannot, arbitrarily, fix upon a certain sum as the
   amount due the assured.

3. **GREEN SLIP**: Attached to Policy: Illustration: Prima-Facie Case.
   Where a life insurance company attached a green slip of paper to
   a policy wherein it stated, by way of illustration of what the policy
   would earn as surplus in a twenty-year period, what similar policies
   had earned in other similar periods, such paper made a prima-facie
   case for the assured that his policy would earn a like amount in
   the absence of the company showing the actual fact which was
   within its knowledge and unknown to the assured.

Appeal from Adair Circuit Court.—*Hon. C. D. Stewart,*
                        Judge.

AFFIRMED.

   *Campbell & Ellison* for defendant in error.

   *Higbee & Mills* and *New, Miller, Camack & Winger*
for plaintiff in error.

ELLISON, P. J.—Plaintiff's action is to require defendant to specifically perform its contract of life insurance by issuing to him a paid-up policy for $1830. It is based on a twenty payment tontine policy of life insurance issued by defendant dated the 15th of December, 1893. The judgment in the trial court was for the plaintiff.

The face of the policy proper is a simple promise to pay $1000 in consideration of the application and twenty annual payments of premiums of $27.60 each. Under the signatures to the policy is the following:

"Notice—This policy and the application taken therefor taken together constitute the entire contract which cannot be varied except in writing by one of the Executive Officers printed above."

On the back of the policy is the following:

## "LIST OF PRIVILEGES."

"It gives to Gene D. Thomas a choice of six methods of settlement upon the completion of the Tontine Period, on the 11th Dec., 1913; First: The continuance of the policy, and the withdrawal of the accumulated surplus, Either in (1) Cash: (2) Paid up Assurance: (3) An Annuity. Or Second: The surrender of the policy for its full value consisting of the entire reserve amounting to $404. Four hundred and four dollars together with the surplus then apportioned by the Society, Either in Cash, or
Paid-Up Assurance, or
A Life Annuity."
(Signed)
H. B. HYDE, Pres.,
W. ALEXANDER, Secy,
GID E. JOHNSON, Gen'l Agent."

Then the following:

"The Tontine Period ends December, 11, 1913. This policy if then in force may either be continued (after which dividends will be apportioned annually from surplus earned) or surrendered. See List of Privileges. No dividend will be declared on this policy

until the 11th day of Dec., 1913. Amount, $1000 Term Life 20 A. P. First Payment, $27.60 A premium due 11th Dec., $27.60. At the end of twenty years, if this policy is then in force, premiums cease, and the policy becomes a fully paid-up life policy."

Pasted on and attached to the policy was the following paper, known as the "Green Slip:"

"Free to —————— Illustration Blank. For a ——— 2 ——— Payment Life policy, with ——————— pending Tontine period. N. B. This blank must be filled up from the Book of tables issued during the current years by the Equitable Life Assurance Society of the United States, and based on the Society's experience on different form of Tontine assurance, up to 1893. It is impossible to predict the results of the future, but from the tables referred to above it is easy to show approximately the amount of surplus profits which would now be payable on a Tontine Policy of the Equitable Life Assurance Society of the United States if it had been issued in the past and ended its Tontine period at the present time. While the results of the future must necessarily depend on the experience of the future (and although some variation must be expected in view of a lower rate of interest and of other modified conditions which affect all life companies and, in a measure, all branches of financial business), figures based on past experience furnish the best attainable data upon which to judge the society and the value of its Tontine Policies. The following figures given on this basis, are therefore deserving of careful examination:

### "ILLUSTRATION."

Amt. of policy, $1000. Tontine period, 20 yrs. Kind, 20 A. P. Age, 24. Annual Premiums, $27.60. Total premiums paid in 20 years $552.00.

### OPTIONS AT END OF TONTINE PERIOD.

1. Cash value consisting of reserve $404.00 and surplus $334.00, ...............$738.00
or, 2. Paid up value, ................... $1830.00
or, 3. Cash surplus, ..................... $334.00

(Or Life Annuity for amount surplus will purchase. Original policy now being fully paid up).

GID E. JOHNSON, Agent, Gen'l Agent.

Dated at Kirksville, Mo., 11-12-1893.''

Plaintiff completed his twenty annual premium payments.

It will be noticed from the foregoing that plaintiff had several privileges or options in the method of settlement of the contract. He elected to take paid-up insurance for $1830. But defendant has insisted from the first that the method claimed by plaintiff of taking a paid-up policy for $1830 is not one of his privileges. Defendant says that the privilege of settlement at the end of the twenty years given to plaintiff was that he could hold his present policy of $1000 as fully paid-up; and in addition thereto to convert the surplus accumulated on the policy ''*as then determined by the defendant*'' into additional nonparticipating insurance. And defendant further says it declared the amount of surplus, thus accumulated on plaintiff's policy during the twenty years it had run, to be one hundred and sixty-five dollars and six cents which would purchase him three hundred and seventy dollars additional insurance, making in all, thirteen hundred and seventy dollars. Defendant set up in its answer that plaintiff selected that form of settlement, and it tendered him a certificate for the additional insurance, which he refused to accept; whereupon defendant tendered it into court.

It is thus seen that plaintiff's claim is for paid-up insurance for $1830 and defendant's is that he should only have $1370. Plaintiff's claim is based on the above-mentioned ''green slip'' being a part of the contract. Defendant accounts for the ''green slip'' as being merely a suggestion based on past experience of the company with a like policy and not intended as an obligation on its part.

It will be noted that the face of the policy proper is nothing but a simple agreement to pay $1000 in consideration of the application and twenty annual payments of $27.60 each. Then what is denominated ''priv-

ileges'' extended to plaintiff, are found on the back of the policy. These privileges, so far as concerns this controversy, are that at the end of the twenty-year period plaintiff could keep the policy and take the surplus which had accumulated during these years, and with it purchase additional paid-up insurance.

It is at this point that the "green slip" attached. to the policy as above set out, begins to affect the case, On that paper there is a heading in bold type composed of the word "Illustration," under which is the amount of the policy, premium, age, etc., which is followed by the words, in bold type, "Options At End of Tontine Period," followed by this: Either, 1st, Cash value consisting of reserve $404 and surplus $334, total $738; or, paid-up value of $1830; or, surplus payable in cash $334. As has been said plaintiff exercised the option to keep the policy and take the accumulated surplus in paid-up insurance, together amounting, as he claims, to $1830.

Plaintiff arrives at his amount from the statement of that amount in the green slip. Defendant arrives at the lesser amount in this way: The provision as to privileges set out on the back of the policy for paid-up insurance in addition to the original policy, is that plaintiff could withdraw the "accumulated surplus" by investing in it "paid-up insurance;" and it claims the right under the contract to itself "apportion," by naming the amount of this surplus, and insists that it did name the amount as $165.06, which, at plaintiff's age, would purchase the said sum of $370.

It is true that under subdivision VI of the application entitled "Tontine Profits," it is stated that at the end of the tontine period the policy shall participate in the surplus "as may then be apportioned by the Society." We do not interpret that as meaning that the insurance company may arbitrarily fix upon a sum of money though it may be far less than the real sum and say it apportions such wrong amount as the surplus. That would be to say that the company could defraud the insured by turning over a part of what his

policy has earned and what belongs to him and convert the balance to its own use. The surplus is a trust fund in the company's hands and upon adjustment, it all must be accounted for. The words, "as may then be," in the expression, "as may then be apportioned by the Society," means, "to be." The expression is not permissive, but mandatory. "The company cannot satisfy its contract by saying that it apportioned to the policy all that was due under it. It must show what was due under it—how ascertained, and from what sources— else it becomes the judge as well as contracting party." [Equitable Life Assurance Society v. Winn, 137 Ky. 641, 646.]

We have not overlooked that it is a part of defendant's insistence that by use of the word "then" in the expression, it was meant that the apportionment was not to be made until the end of the tontine period, and therefore it could not have been intended to make a guaranty of a definite sum at the beginning of that period. The suggestion, we think, does not answer the position that to induce plaintiff to take the policy, defendant did agree that the sum to be apportioned at the end would be $1830.

So we deny that defendant has a right to fix the surplus contrary to what it is in point of fact in the instance of the plaintiff exercising his privilege of retaining the original policy and using the surplus to purchase other additional insurance; and we therefore come to a consideration whether the green slip is to be taken as a guaranty, or contract, that the paid-up insurance, including the original policy, shall be $1830 as found by the trial court.

From the argument it would seem that defendant looks upon the slip as the individual matter of a local soliciting agent not binding on it; and that it is apparently at a loss to know how the slip became attached to the policy. In the first place the agent who solicited and obtained the policy for plaintiff and delivered it to him, was a general agent (he so testified in answer to a question by defendant), and the slip

attached to the policy when it was delivered, was signed "Gid E. Johnson Agent, Gen'l. Agent." It is not denied that it was gotten out in blank form by the defendant company, of course to be used by agents; and it contains printed direction that the blanks therein are to be filled up from defendant's "Book of Tables" issued by it during the current years, to be based on defendant's experience up to 1893, the date of this policy. We think there can be no doubt but that it should be taken and considered as though the defendant itself had filled in the blanks and attached the slip to the policy and then delivered to the plaintiff. This, however, still leaves the effect of the slip to be considered, but it gets out of the way much of the discussion in the case.

Plaintiff testified that the agent had represented when he was seeking to get him to insure that the paid-up policy would amount to $1830 and that it was this which formed an inducement to him to enter into the contract and that when the policy was delivered he saw that the agent's representation had been embodied in the slip and he accepted it. We cannot distinguish the case from that of Forman v. Mutual Life Ins. Co., 173 Ky. 547, where the entire question is discussed at length The statement of the facts in that case, the conduct of the parties, the influence that attaching the slip had in that case are practically the same as in this. It is true the slip in that case was signed by the "Assistant Secretary" of the company, while in this it is by a "General Agent," but we are satisfied it was the company's act in each instance and we are only left to interpret the meaning of the representation, or illustration, whichever it may be called. The court in that case said at page 563 of the report that, "No person of ordinary intelligence, receiving a policy under the circumstances Mr. Forman accepted this one, would have any reasonable doubt that the 'illustration' was intended to be and was a part of the contract. Nor can there be any reasonable doubt that the company intended he should so believe."

In this case, as in that, aside from the amount stated
in the green slip, there is no sum named as the surplus,
neither in the policy itself, in the printed matter on the
back of it, or in the application. So that we have to de-
pend on the slip alone for anything in this respect of
definite character. We therefore are confronted with
the question exactly as the Court was in the Forman case,
that is, whether the slip though a part of the contract,
binds the company to issue the additional insurance in
a certain sum (in that case to pay a certain surplus),
or was it intended as a mere promise to issue an addi-
tional policy in whatever sum defendant might arbitarily
apportion as the surplus? We think it bound to the
former. The Court in that case said (p. 563): "that
neither in the application nor in the policy is there any
statement as to the amount of surplus that would be
apportioned to the policy. The matter of distribution
and apportionment was left by the terms of these papers
to the good faith and honesty of the company. But
when we turn to the 'illustration' we find, in option
'D', under the head of 'options at the end of twenty
years,' that he should have the right 'to draw accumu-
lated surplus in cash, . . . $998.08 cash surplus.'
It is very true that this 'illustration' also recites that:
'What this surplus will be in future settlements will
necessarily depend upon subsequent experience,' and
further states that: 'The accompanying figures are
correct as an illustration based upon the experience of
the company.' But if the company did not intend to
practice a fraud on Forman or to deceive him—and it
is urgently insisted that the company did not intend to
do either—what was the purpose in making a part of
the contract this 'illustration' and specifying in it that
he should have the option at the end of 20 years "to
draw accumulated surplus in cash, . . . $996.08?""

But there is another phase of the case which de-
termines it against the defendant. Leaving the "green
slip" and going to the policy itself, we find on the back
thereof as we have already set out that at the end of
the tontine period, plaintiff could elect to continue the

original policy as paid-up and "withdraw the accumulated surplus" with which he could purchase additional "paid-up assurance." By this he was entitled to an amount of accumulated surplus to be invested in paid-up insurance; and that amount is unnamed. How is he to ascertain what it is—how is he to learn what it has grown to be in the twenty years it has been accumulating in defendant's hands? At the trial the green slip made out by defendant was introduced in evidence. It showed according to defendant's own theory what surplus similar policies had earned in the same period just preceding this one, viz., $334, which would purchase for plaintiff $830 additional insurance, being the amount he claims should be added to the original policy.

Now that showing was of some probative force. The true amount was wholly unknown to plaintiff, but was fully known to defendant. It had data at hand from which it could, at any moment, furnish complete information. In these circumstances was not the *onus* thrown on defendant to show the true amount if it meant to dispute the "green slip Illustration?"

There is a rule of evidence which has been formulated upon the most reasonable ground and which has the effect to prevent a failure of justice. It is that where knowledge of a material fact lies with one party he must prove it (Clifford v. Donovan, 195 Mo. 266, 285; Frame v. Sovereign Camp, 67 Mo. App. 127, 135); the other party being unable to produce evidence of it, it will be presumed to be that which would be most advantageous to the party who cannot produce it as against him who can. 1 Wigmore on Evidence, Sec. 285, pages 368, 369, and notes of decisions, among others the case of Armory v. Delamirie, 1 Strange 505, where the jeweler kept a jewel which the boy who found it gave him to look at. In an action of trover by the boy who claimed it was of finest quality, the jeweler refusing to produce it, the boy was allowed its value on his estimate of its quality. For closely related rule see Fifth-Third Nat'l. Bank v. McCrory, 191 Mo. App. 295, 297, 298; Cudahy v. Railroad, 196 S. W. 406.

The surplus arising on a policy like this is, as we have said, a trust fund in the hands of the insurance company. It is the duty of such companies to keep a record of it, and it is common knowledge that they have a system, evidenced by their books, whereby they keep trace of its growth as well as its decline, so that they may at the proper time for accounting to the policyholder render to him, or produce to the court, a statement showing the fact. [Equitable Life Assurance Society v. Winn, 137 Ky. 641, 648.] It would be as unjust as it is absurd to say that an insurance company may apportion an arbitrary amount as the surplus and when its correctness is questioned, to allow it to hide the fact by refusing to produce the evidence showing such fact.

Defendant makes technical complaint of the form of the judgment. The order contained in the judgment is that defendant execute an instrument of writing by the terms of which it will obligate itself to pay $1830 on the death of plaintiff; and that defendant may make such obligation by endorsement upon the policy, or by attaching thereto an instrument of writing executed by it; or by the execution of an entirely new obligation, etc. We do not see wherein this choice of mode of arriving at the result ordered can in any way harm defendant. It would appear that, if anything, it would probably be a beneficial convenience to it.

We have not discovered any ground for disturbing the judgment and it is accordingly affirmed. *Timble, J.*, concurs. *Bland, J.*, dissents.

BLAND, J. (dissenting).—I am unable to agree to the majority opinion in this case and will state as briefly as possible the reasons for my dissent.

On the 15th day of December, 1893, the defendant issued to the plaintiff a policy of life insurance in the sum of one thousand ($1,000) dollars; this policy was designated as a "Free Tontine Limited Payment Life Policy." The policy provided that should the plaintiff pay the annual premium of twenty-seven and 60/100 ($27.60) dollars, provided therein, yearly for twenty

(20) years, that on the 11th day of December, 1913, the insured should have the choice of six methods of settlement. Plaintiff paid his premiums for twenty years as agreed. The contract consisted of the application and the policy and provided, among other things, as follows:

"VI.  TONTINE PROFITS.
At the end of the Tontine Period, if the person proposed for assurance be then living, and the policy in force, the policy shall participate in the accumulated surplus derived from policies on the Free Tontine plan, both existing and discontinued, as may then be apportioned by the Society."

"VII.  CHOICE OF PRIVILEGES AT THE END OF THE TONTINE PERIOD.
The policy may then be surrendered for its full value, consisting of the entire reserve and the surplus then apportioned by the Society—Either in 1, Cash, or, 2, Paid-up Assurance, or, 3, An Annuity for Life.  Or, if the policy is not an endowment maturing at the end of the Tontine Period, it may be continued and the surplus taken—either in 1, Cash, or 2, Paid-up Assurance, (To be added to the Policy), or 3, An Annuity, (To reduce or extinguish premiums if still payable).

"But it is expressly understood, that for all paid-up assurance in excess of the amount of the original policy, or issued in lieu of a matured endowment, a satisfactory medical certificate shall be furnished to the Society."

The petition alleged that plaintiff had done all the things required of him by his contract with the defendant; that he had elected to settle by taking a paid-up policy under his contract; that the defendant company had agreed with plaintiff when the policy was issued that should he adopt such method of settlement that the amount of paid-up insurance to which he would be entitled on said 11th day of December, 1913, was the sum of eighteen hundred and thirty ($1830) dollars, and prayed the court that defendant be required to issue to him a fully paid-up policy of insurance in said sum.

In support of the allegations of his petition plaintiff introduced the following writing, referred to as a "green slip," which was attached to the policy:

"Free to —————————— Illustration Blank.  For a —— 2 ———— Payment Life Policy, with —— pending Tontine period.

N. B. This blank must be filled up from the Book of tables issued during the current years by the Equitable Life Assurance Society of the United States, and based on the Society's experience on different forms of Tontine assurance, up to 1893.

'It is impossible to predict the results of the future, but from the tables referred to above it is easy to show approximately the amount of surplus profits which would now be payable on a Tontine Policy of the Equitable Life Assurance Society of the United States if it had been issued in the past and ended its Tontine period at the present time.  While the results of the future must necessarily depend on the experience of the future (and although some variation must be expected in view of a lower rate of interest and of other modified conditions which affect all like companies and, in a measure, all branches of financial business), figures based on past experience furnish the best attainable data upon which to judge the management of the Society and the value of its Tontine policies.

The following figures given on this basis, are therefore deserving of careful examination:

### ILLUSTRATION.

Amt. of policy, $1,000.  Tontine period, 20 yrs. Kind, 20 A. P. Age 24. Annual Premiums, $27.60. Total premiums paid in 20 years $552.00.

### OPTIONS AT END OF TONTINE PERIOD.

1, Cash value consisting of reserve
$404.00 and surplus $334.00 ....$    738.00
or, 2, Paid-up values*...............$  1830.00
or, 3, Cash surplus .............,......$    334.00

(Or Life Annuity for amount surplus will purchase, Original policy now being fully paid up).

    GID E. JOHNSON, Agent, Gen'l Agent.
Dated at Kirksville, Mo. 11-12-1893.

*When the paid-up value exceeds the amount of the original policy the assured has the privilege of taking a paid-up policy for the full amount of the original policy, and of drawing the cash value of the excess, subject to a satisfactory medical certificate of good health.''

The figures in the foregoing illustration were inserted by the general agent of defendant at Kirksville, Mo.

Plaintiff claims that this ''green slip'' was a part of the policy and guaranteed to him paid-up insurance in the sum of eighteen hundred and thirty ($1830) dollars: Defendant claims that it was a mere illustration, or estimate, and was never intended by it to be a part of the contract, or a guarantee of any kind.

''Tontine insurance is a form of life insurance by which the policy holder agrees, in common with the other policyholders under the same plan, that no dividend, return premium, or surrender value shall be received for a term of years called the tontine period, the entire surplus from all sources being allowed to accumulate to the end of that period, and then divided among all who have maintained their insurance in force.'' [25 Cyc. 700.]

Under this policy if the insured survived the stated period of twenty years, the amount of additional insurance that he might elect to receive was in its nature uncertain, and in the nature of things incapable of being computed in advance. The amount of the surplus earned on this policy was necessarily contingent and could only be determined when at the end of the tontine period the aggregate of the fund by accretions, dividends, lapses, interest, etc. could be ascertained for division among the survivors: The very nature of the policy made it impossible to tell what the accumulated surplus derived from like policies would be. The application for the policy stated that it and the policy taken together shall

198 M. A.—35

constitute the entire contract between the parties, and that ''the distribution of surplus which may be adopted and approved by the Society is hereby accepted by me in my own behalf and for every person who shall have any interest in the policy now applied for.''

The policy further provides that dividends will not be apportioned until December 11, 1913, and that the surrender value of the policy shall consist of the entire reserve, amounting to .four hundred and four ($404) dollars, together with the surplus then (meaning Dec. 11, 1913) apportioned by the Society.

The policy was executed at the home office, signed by the officers of the company and by Gid E. Johnson, General Agent, who solicited insurance and collected insurance premium for defendant at Kirkville Missouri. It seems to me the foregoing provisions in the application for the policy, and the policy itself, together with the terms of the ''green slip,'' show conclusively by even a casual reading that it was not the intention of the defendant to guarantee to plaintiff any specific amount of additional insurance: The ''green slip,'' as described therein, is an illustration, and it is stated expressly that ''it is impossible to predict the results of the future,'' and that the tables referred to show *approximately* the amount of surplus profits which would (that is, at the date of the issuance of the policy) be payable on a Tontine policy of the defendant, if it had been issued in the past and ended its Tontine period at the present time (that is, twenty years prior to the end of the Tontine period of the policy sued on in the case at bar.)

It has been held in numerous cases that prospectuses, illustrations, statements and papers giving estimates or predictions, only, of future earnings of policies, given or sent to insured with his policy, are not a part of the policy itself unless made so by the terms of the policy or the application therefor. [Truly v. Insurance Co., 66 So. 970; Tourtellotte v. Insurance Co., 155 Wis. 455; Untermyer v. Insurance Co., 113 N. Y. Supp. 221; MacIntyre v. Insurance Co., 82 Ga. 478; Grange v. Insurance Co., 235 Pa. 320; Williams v. Insurance Co., 122 Md. 141;

Provident Savings Life Assurance Society v. Withers, 132 Ky. 541; Langdon v. Northwestern Life Insurance Co., 199 N. Y. 188.]

The only apparent exception to this rule that I have been able to find is the case of Forman v. Insurance Co., 173 Ky. 547. This case is the only one cited in the majority opinion in connection with this branch of the case. The majority opinion is based wholly on this Kentucky case. Although this Kentucky case is an extreme one and it may be assumed with a good deal of reason that it is not in harmony with the great weight of authority on the subject, I am willing to follow the Kentucky court in reference to the matter. However, I am not willing to extend the rule laid down in the Kentucky case cited, especially where the evidence does not justify any such extension. In the Kentucky case referred to there was a paper called an illustration, used by soliciting agents. This paper was exhibited to Forman at the time he was solicited for insurance. The language of the illustration in the Forman case is somewhat different from that used in our ''green slip.''

However, the difference in language is not by any means the principal difference between the Forman case and ours. In the Forman case when the illustration was presented by the soliciting agent at the time he was soliciting the insurance Forman stated that this illustration appealed to him, but that he wanted some head officer of the company to approve it before he accepted the insurance. So the agent forwarded the illustration to the head office at New York City and it was returned to plaintiff attached to the policy, having these new words added to the illustration, as follows, ''Please endorse as correct.'' These words were put on the illustration by the soliciting agent asking the head office to endorse the correctness of the illustration. The illustration was thereafter endorsed by the signature of F. Schroider, Assistant Secretary of the Company, being the same person who had signed the policy itself. The Forman case shows that the insured in ac-

cepting the policy understood, on account of the company expressly guaranteeing *in writing* that the illustration, including the amount of money mentioned therein, was correct, that when the option period arrived he would have the right to ·select one of the amounts specified in the illustration.

It will be thus seen that in the Forman case there was what amounted to an agreement with the company by its head officers in New York guaranteeing to the insured *in writing* that he would receive the amount of money mentioned in the illustration. I cannot see how the facts in that case can be in any way compared to those in our case. In our case there is no·evidence that the plaintiff ever saw the ''green slip'' at all until after the policy was delivered.

Even under the Forman case, in order to make a case of this kind four things must be conclusively established: First, a definite promise to pay a certain and definite amount of money and an acceptance of such a promise by the insured; Second, this promise to be the consideration without which the insured would not have taken the insurance; Third, the promise to pay the amount claimed, to be in writing, otherwise it would contradict and add to the written application; Fourth, an oral or written agreement that this writing should become a part of the policy.

How does the case made by plaintiff measure up to these requirements? First. I am of the opinion that the evidence fails to show that the agent at the. entering into of the written application or at any time before the delivery of the policy, or, in fact, after the delivery, told plaintiff that he was to get eighteen hundred and thirty ($1830) dollars. Second: I do not think that there is any evidence in the record that any statement made by the agent to plaintiff at the time he applied for the insurance was the cause of plaintiff making such application. However, if it be conceded that the agent in soliciting the insurance told plaintiff that he was to get $1830 and plaintiff relied upon such a representation, then the third and fourth requisites are

absent.   Third: The application was in writing.   In it plaintiff requested Tontine insurance.   Tontine insurance is a kind of insurance where the surplus is not to be ascertained until the end of the Tontine period, consequently plaintiff agreed *in writing* that he would wait until twenty years to see what he was to get.   Besides this, in the application he stated that all oral matters were merged into the application.   Unless the agreement to pay $1830 was in writing (even though it could be said that such a written agreement could be identified and added to the contract by parol), then it was of no effect as it would change and add to a written agreement.   (The application).   Fourth: There is no claim that the agent told plaintiff that this alleged oral agreement was to become a part of the policy.

But this is not all.   Even if could be said that the "green slip" was a part of the policy, the duty would devolve upon us to construe the meaning of the language used therein.   The language used in the "green slip" shows upon its face that no amount was guaranteed, to say nothing of $1830.   Plaintiff applied for tontine insurance and in his petition he says that this policy was for tontine insurance.   Under tontine insurance it is impossible to tell at the time the policy is written what the policy and like policies will earn in the next twenty years.   This court must construe the insurance contract as written.   If we construe this whole contract as written, and assume that the "green slip" was a part of it, there can be no conclusion but what the contract was not an agreement to pay any certain sum of money.   The "green slip" not only does not guarantee any specific sum of money but it says "it is impossible to predict the results of the future."

I think under the pleadings in this case it is not possible for us to enter into the consideration of the question whether a fair accounting would show that plaintiff was entitled to $1830, as the petition is not for an accounting but a suit upon an agreement to pay $1830.   Therefore, I cannot agree with what is said in the majority opinion in reference to this matter.

But, even admitting that we can consider the matter of accounting, then I disagree with what is said about it. The majority opinion in support of its holding that plaintiff may force the defendant to an accounting states, quoting from the case of Equitable Life Assurance Society v. Winn, 137 Ky. 641, that: "The company cannot satisfy its contract by saying that it apportioned to the policy all that was due under it. *It must show what was due under it—how ascertained, and from what sources,* else it becomes the judge as well as contracting party." Whatever the law may be in Kentucky, our Supreme Court has held on two occasions that a policy holder cannot force an accounting with an insurance company in a proceeding brought directly for that purpose. [State v. Insurance Co., 229 Mo. 187; State v. Insurance Co., 245 Mo. 78.] However, as I have already said, in my opinion, this is not a suit for an accounting.

It is urged by plaintiff that even though this court find that the "green slip" cannot be considered as a part of his contract with the defendant, that, nevertheless, he is entitled to paid-up insurance in the sum of eighteen hundred and thirty ($1830) dollars, and he says that the evidence which will prove this fact, being the books of the defendant, is peculiarly within the knowledge of the defendant, therefore the burden of proving that he is not entitled to the sum that he claims is upon the defendant. In urging this point plaintiff says that the "green slip" is admitted by the defendant to be a correct statement of what a similar policy to that held by plaintiff would have been entitled to had it run for the twenty years prior to the 15th day of December, 1893, the date of the issuance of the policy sued on, and for that reason it is some evidence as to what was earned by the company for the twenty years since December 15, 1893, and of which plaintiff is entitled to under his policy; that having proven these facts, the burden shifts upon the defendant to show that plaintiff is not entitled to said policy in the sum of eighteen hundred and thirty ($1830) dollars.

Whether the rule attempted to be invoked by plaintiff in this case is applicable as thought by the majority opinion, the record shows that the defendant did prove that under the provisions of its contract with plaintiff, that plaintiff was only entitled to an additional amount of paid-up insurance in the sum of three hundred and seventy ($370) dollars, and defendant tendered to plaintiff an additional policy in the sum of three hundred and seventy ($370) dollars and deposited the same in court for the use of plaintiff.

The petition in this case does not allege, nor does the proof show, any fraud or imposition practiced upon the plaintiff by which he was induced to accept the policy, nor that there was any fraudulent suppression or omission of any part of the agreements between plaintiff and defendant, nor does plaintiff allege or prove that there was any mistake in the contract of insurance which was mutual, or which resulted in mutual error.

Plaintiff in his application for insurance and in the policy agreed that the policy shall participate in the accumulated surplus derived from policies on the Free Tontine plan, both existing and discontinued, as may then (that is, on Dec. 11, 1913) be apportioned by the Society. There is no allegation that the Society improperly, fraudulently or mistakenly made the computation which plaintiff agreed that it should make; nor is there any allegation that there was not a fair and equitable distribution of such surplus. In fact, the petition alleges a cause of action wherein it is stated that the defendant agreed that it would issue to plaintiff at the end of the Tontine period a policy in the sum of eighteen hundred and thirty ($1830) dollars, and whether the defendant has fairly or equitably apportioned the surplus is immaterial in this case.

The contract does not provide that the company may arbitrarily give to plaintiff the amount of money it sees fit, but it provides that at the end of the Tontine period the policy shall participate in the accumulated surplus derived from policies on the Free Tontine plan, both existing and discontinued and, further, that this

amount is to be apportioned by the Society. What plaintiff was to get is certain. He was to get his part of the accumulated surplus, only the manual work of computing what that amount would be was left to the company. The company made the computation in this case and showed that plaintiff was not entitled to eighteen hundred and thirty ($1830) dollars, and there is neither pleading nor proof that the calculation was improperly, unfairly, inequitably or mistakenly made by the company.

I cannot see under what theory plaintiff is entitled to recover in this case. Reduced to its last analysis: This case is nothing more than an effort on the part of a party to a written contract consisting of an application and a policy of tontine insurance, which says that the surplus cannot be ascertained for twenty years after its date, with a "green slip" attached thereto that, likewise, plainly on its face purports to be an estimate and with no guarantee whatever, attempting, by oral evidence that, in my opinion, is so indefinite that no one can really tell what it means, to contradict by parol the written agreement by saying that the agent soliciting, the insurance (although he was a general agent), whose lips are sealed in death, told him verbally that the contract was something other than what was written.

I think the judgment should be reversed.